UNITED STATES, Appellee

v.

Cassandra M. RILEY, Private
U.S. Army, Appellant

No. 11-0675

Crim. App. No. 20100084

United States Court of Appeals for the Armed Forces

Argued January 22, 2013

Decided April 16, 2013

ERDMANN, J., delivered the opinion of the court, in which BAKER,
C.J., and EFFRON, S.J., joined.  STUCKY, J., filed a separate
dissenting opinion, in which RYAN, J., joined.

Counsel


For Appellant:  Captain Brandon H. Iriye (argued); Colonel
Patricia A. Ham, Lieutenant Colonel Imogene M. Jamison, Major
Richard E. Gorini, and Captain Richard M. Gallagher (on brief).

For Appellee:  Captain Daniel D. Maurer (argued); Major
Katherine S. Gowel, Major Robert A. Rodrigues, and Captain
Samuel Gabremariam (on brief); Captain Kenneth W. Borgnino.

Military Judge:  Gregory A. Gross


**This opinion is subject to revision before final publication.**

Judge ERDMANN delivered the opinion of the Court.

A military judge sitting as a general court-martial convicted Private Cassandra M. Riley, pursuant to her plea, of kidnapping a minor in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006).  A panel of officers sentenced Riley to confinement for five years, forfeiture of all pay and allowances, and a dishonorable discharge.  The convening authority approved the sentence as adjudged.  The United States Army Court of Criminal Appeals (CCA) summarily affirmed the findings and sentence.  United States v. Riley, No. ARMY 20100084 (A. Ct. Crim. App. July 7, 2011).  This court granted review, set aside the CCA's decision, and remanded for further appellate inquiry and consideration of the granted issues.  United States v. Riley, 70 M.J. 415 (C.A.A.F. 2011) (summary disposition).  On remand, the CCA again affirmed the findings and sentence.  United States v. Riley, No. ARMY 20100084, 2012 CCA LEXIS 175, at *10, 2012 WL 1816206, at *4 (A. Ct. Crim. App. May 11, 2012).

We granted review of two issues in this case:  whether Riley's trial defense counsel were ineffective; and, whether there is a substantial basis to question the providence of Riley's guilty plea.[1]  As we conclude that the military judge

---

[1] We granted review of the following issues:

abused his discretion when he accepted Riley's guilty plea without ensuring that Riley was aware of the sex offender registration consequences of her plea, we need not reach Issue I. The findings and sentence are set aside and the record of trial returned to the Army Judge Advocate General.

## Facts

a. Background

The incident giving rise to the charges took place in the Mother/Baby Unit at Darnall Army Medical Center on Fort Hood, Texas, on July 27, 2009. Dressed in scrubs, apparently pretending to be a nurse, Riley entered the room of MB and her newborn son. Believing Riley to be the charge nurse, MB asked her for a few items from the front desk. Riley began to exit the room and MB went into the bathroom. When MB came out of the bathroom her baby was not in the bassinet where he had been sleeping. MB went out in the hallway and found Riley putting

---

I. Whether Appellant received ineffective assistance of counsel when her defense counsel failed to inform her that she would have to register as a sex offender after pleading guilty.

II. Whether, in light of United States v. Miller, 63 M.J. 452 (C.A.A.F. 2006), there is a substantial basis to question Appellant's guilty plea due to the military judge's failure to inquire if trial defense counsel informed Appellant that the offense to which she pleaded guilty would require Appellant to register as a sex offender.

United States v. Riley, 71 M.J. 443 (C.A.A.F. 2012) (order granting review).

the baby in a backpack.  MB took the baby and Riley left the
Mother/Baby Unit of the hospital.  Riley was apprehended five
days later and during a subsequent interview with Army
investigators, admitted taking the baby.

   b.   Riley's Pretrial Agreement and the Sex Offender
        Registration Consequences of the Plea

     Riley entered into a pretrial agreement that capped
possible confinement at eleven years in exchange for her guilty
plea.  She was ultimately sentenced to five years confinement.
Because she was convicted of kidnapping a minor, Riley was
required to register as a sex offender.  According to her post-
trial affidavit, Riley did not learn of the sex offender
registration requirement until several months after her court-
martial was complete.  In her post-trial affidavit, Riley wrote:

> Had I known that after pleading guilty I would have to
> take my place among the ranks of sex offenders, I
> would not have entered the pre-trial agreement as
> written.  I would have asked [my attorney] to do
> whatever she could during negotiations with the
> government to ensure that any guilty plea would not
> require sex offender registration.  I would have been
> open to pleading guilty to another offense or an
> amended Specification of the Charge, provided I would
> not have to register as a sex offender.  Unless a deal
> removed the prospect of sex offender registration, I
> would have made clear to the government that I was not
> going to plead guilty, as charged, and I would have
> insisted on going to trial.

     Riley's court-martial took place in the fall of 2009, three
years after we issued our decision in United States v. Miller,
in which we held "[f]or all cases tried later than ninety days

after the date of this opinion, trial defense counsel should inform an accused prior to trial as to any charged offense listed on the DoD [Instruction] Listing Of Offenses Requiring Sex Offender Processing."[2]  63 M.J. 452, 459 (C.A.A.F. 2006). Riley's lead defense counsel submitted a post-trial affidavit addressing the issue of sex offender registration.  Riley's attorney wrote that she did not advise Riley that a conviction for kidnapping a minor was an offense requiring sex offender registration because she "was not aware of the requirement or consequence for such a kidnapping conviction."

Defense counsel's affidavit reveals, however, that throughout the fall of 2009 when she was handling Riley's case, her superiors repeatedly reminded defense counsel to notify clients about potential sex offender registration consequences of convictions:

> On or about 15 September 2009, I received an email forwarded to me from my Regional Defense Counsel concerning an updated Post Trial & Appellate Rights form and Advice Concerning Possible Requirements to Register as a Sex Offender . . . .
>
> During the Fiscal Year 2010 Fall TDS CONUS Conference held at Naval Station Newport in Rhode Island from 28 through 30 October 2009, Mr. Keith Hodges, one of the TDS Highly Qualified Experts, asked all attendees if we had received the email from 15

---

[2] The list of offenses requiring sex offender registration contained in Dep't of Defense, Instr. 1325.07, Administration of Military Correctional Facilities and Clemency and Parole Authority Enclosure 27, at 101 (July 17, 2001), includes the Article 134, UCMJ, offense of Kidnapping of a Minor (by a person not parent).

5

> September 2009. Once he verified that we had received the email, he mentioned that it should be self-explanatory, but that if anyone had any questions about its use to contact him . . . .

> On or about 4 December 2009, I received another email forwarded to me from my Regional Defense Counsel which was entitled "DCAP Sends 3-31 – Sex Offender Registration Advice (1 Dec 09)" which contained a word document entitled, "DCAP SENDS 3-31 Sex Offender Registration Advice (1 December 2009)."

Riley's defense counsel went on to state that, "[o]ther than the two email forwards and the one reference at the . . . conference to the first email, I did not receive any formal training or instruction about providing clients with advice on collateral consequences stemming from convictions, in particular, requirements for sex offender registration." She did, however, have experience advising clients about sex offender registration consequences.

The standard post-trial and appellate rights form used at the time of Riley's court-martial did not address sex offender registration, but the instructions to defense counsel using the form advised counsel of the additional steps that needed to be taken if the accused was charged with any sex offense or an offense involving a minor. In her affidavit, defense counsel stated:

> Between the issuance of the email containing this form on 15 September 2009 and my explanation to appellant of her post-trial and appellate rights on 2 February 2010, I had not used the updated Post Trial and Appellate Rights form that was issued on 15 September 2009. When I advised appellant of her post-trial and

6

> appellate rights using the 15 September 2009 form, I
> had not read the instruction sheet; I printed the form
> and advised appellant of her rights using the form
> itself.

Emphasis added. The instructions for the post trial and appellate rights form, which defense counsel did not read, provides in part: "If the accused has been charged with any sex offense or offense involving a minor (see table below), also have the accused execute the 'Advice Concerning Requirements to Register as a Sex Offender form.'" The table included on the instruction sheet listed the various UCMJ, state, territorial and federal laws, the violation of which would trigger registration as a sex offender. The Article 134 offense of kidnapping of a minor by other than a parent or guardian is specifically listed as an offense requiring sex offender registration.

  c.  The Providence Inquiry

The military judge questioned Riley about her plea during the providence inquiry. The military judge explained the rights she was giving up by pleading guilty, reviewed the stipulation of fact with her, reviewed the elements of the offense, and asked Riley to tell him, in her own words, why she was guilty of kidnapping. The military judge reviewed the maximum punishment with Riley and the attorneys. The military judge asked Riley whether she entered into the pretrial agreement of her own free will, and whether she understood the pretrial agreement and how

it would affect her case. The military judge also asked Riley if she was satisfied with her defense counsel and their advice.

The military judge, however, did not address the sex offender registration consequences of Riley's plea before finding the plea provident and issuing his findings. As a result, there was no mention or discussion of the sex offender registration consequences of Riley's guilty plea by anyone, either prior to, or during the court-martial proceedings. The military judge found Riley guilty and the panel sentenced her to forfeiture of all pay and allowances, confinement for five years, and a dishonorable discharge.

d. Review by the Army Court of Criminal Appeals

The Army Court of Criminal Appeals initially summarily affirmed Riley's conviction. On appeal to this court, we remanded the case to the CCA for further appellate inquiry and consideration of the granted issues including the sex offender registration issue. The CCA again affirmed the findings and sentence, concluding that Riley suffered no prejudice and the military judge did not err in accepting Riley's guilty plea, because "nothing in the record [showed] any misunderstanding of a collateral consequence [by Riley] [that] was made readily apparent to the judge." Riley, 2012 CCA LEXIS 175, at *7-*9, 2012 WL 1816206, at *2-*3.

## Discussion

On appeal to this court Riley argues that sex offender registration is a major consequence of her plea because: she will have to endure the societal stigma of being a sex offender for the rest of her life; she would not have pled guilty and would have insisted on going to trial unless the Government removed the prospect of sex offender registration; Miller implicitly elevated sex offender registration as a "major" collateral consequence of a plea; and, the Government's case against Riley was worth "nowhere near her cap of eleven years of confinement." According to Riley, this court's decision in Miller, and the Supreme Court's ruling in Padilla v. Kentucky, 130 S. Ct. 1473, 1487 (2010) (finding defense counsel's performance "constitutionally deficient" based on his failure to advise defendant that his plea of guilty made him subject to automatic deportation), compel the conclusion that the accused must be aware of sex offender registration requirements in order for the plea to be knowing and voluntary under Article 45, UCMJ, 10 U.S.C. § 845 (2006). She goes on to argue that the military judge had an affirmative duty to ask if she had been informed of the sex offender registration requirements, in accordance with the Military Judges' Benchbook. Riley maintains that the military judge's failure to do so provides a substantial basis in law to question the plea.

United States v. Riley, No. 11-0675/AR

In response, the Government contends that military judges have no affirmative obligation to inquire into whether an accused is aware of sex offender registration consequences of a plea.  The Government reads our decision in Miller as placing the burden to inform the accused of sex offender registration requirements on defense counsel rather than the military judge.  In addition, the Government argues that nothing in Riley's guilty plea evidenced any misunderstanding about collateral consequences readily apparent to the military judge and there is no substantial basis to question Riley's guilty plea.

"'A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion.'"  United States v. Inabinette, 66 M.J. 320, 322 (C.A.A.F. 2008) (citations omitted).  An abuse of discretion occurs when there is "something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea."

Article 45(a), UCMJ provides:

If an accused after arraignment makes an irregular pleading, or after a plea of guilty sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect, or if he fails or refuses to plead, a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty.

United States v. Riley, No. 11-0675/AR

This article "includes procedural requirements to ensure that military judges make sufficient inquiry to determine that an accused's plea is knowing and voluntary, satisfies the elements of charged offense(s), and more generally that there is not a basis in law or fact to reject the plea." United States v. Hayes, 70 M.J. 454, 457 (C.A.A.F. 2012). In order to determine whether Riley's plea was knowing and voluntary, we look to the record of trial and the documents considered by the court below. United States v. Garlick, 61 M.J. 346, 350 (C.A.A.F. 2005).

A "guilty plea is a grave and solemn act" which should be accepted "only with care and discernment." Brady v. United States, 397 U.S. 742, 748 (1970). "[T]he plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial -- a waiver of his right to trial before a jury and judge." Id. "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Id.

"It is axiomatic that '[t]he military justice system imposes even stricter standards on military judges with respect to guilty pleas than those imposed on federal civilian judges.'" United States v. Soto, 69 M.J. 304, 306 (C.A.A.F. 2011) (alteration in original) (quoting United States v. Perron, 58

11

United States v. Riley, No. 11-0675/AR

M.J. 78, 81 (C.A.A.F. 2003)).  "[I]t is the military judge's 'responsibility to police the terms of pretrial agreements to insure compliance with statutory and decisional law as well as adherence to basic notions of fundamental fairness.'"  Id. at 307 (quoting United States v. Partin, 7 M.J. 409, 412 (C.M.A. 1979)).

   a.  Sex Offender Registration as a Collateral Consequence of the Plea

   The Government, quoting United States v. Delgado-Ramos, 635 F.3d 1237, 1239 (9th Cir. 2011) (internal quotations omitted), argues that the military judge had no affirmative obligation to inquire into whether Riley was aware of sex offender registration consequences of her plea because "a court conducting a plea colloquy must [only] advise the defendant of the direct consequences of his plea, [and] need not advise him of all the possible collateral consequences."  Indeed, in Miller, 63 M.J. at 457-58, we addressed sex offender registration as a collateral consequence which was "separate and distinct from the court-martial process," when we held that the military judge "did not err in his responsibility to ensure that Appellant understood all the consequences of his guilty plea." Our analysis in Miller was informed, in part, by the reasoning of other federal courts related to collateral consequences and ineffective assistance of counsel claims.  We noted that the United States Court of Appeals for the Tenth Circuit held that

"'deportation is a collateral consequence of the criminal proceeding and therefore the failure to advise does not amount to ineffective assistance of counsel.'"  Id. at 458 (quoting Varela v. Kaiser, 976 F.2d 1357, 1358 (10th Cir. 1992)). However, following our decision in Miller, the Supreme Court issued its decision in Padilla, 130 S. Ct. at 1482, holding that "[d]eportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or collateral consequence.  The collateral versus direct distinction is ill-suited to evaluating a Strickland claim concerning the specific risk of deportation."[3]

State courts have grappled with the import of Padilla with respect to sex offender registration consequences.  For example, in People v. Fonville, 804 N.W.2d 878, 894 (Mich. Ct. App. 2011), the Court of Appeals of Michigan analogized Padilla as follows:

> Like the consequence of deportation, sex offender registration is not a criminal sanction, but it is a particularly severe penalty.  In addition to the typical stigma that convicted criminals are subject to upon release from imprisonment, sexual offenders are subject to unique ramifications, including, for example, residency-reporting requirements and place of domicile restrictions.  Moreover, sex offender registration is "intimately related to the criminal process."  The "automatic result" of sex offender registration for certain defendants makes it difficult to "divorce the penalty from the conviction . . . ."

---

[3] Strickland v. Washington, 466 U.S. 668 (1984).

13

United States v. Riley, No. 11-0675/AR

Id. (alteration in original) (footnotes omitted) (quoting

Padilla, 130 S. Ct. at 1481).[4]  We agree with this reasoning.

Indeed, when we set forth the prospective rule in Miller, we

emphasized the specific need for knowledge of sex offender

registration consequences in the court-marital setting:

> [T]he importance of this rule springs from the unique
> circumstances of the military justice system.  More
> often than not, an accused will be undergoing court-
> martial away from his or her state of domicile.  Also,
> the court-martial and the plea may occur without the
> assistance of counsel from the accused's domicile
> state.  Finally, every state has its own version of
> Megan's Law.  These circumstances can contribute to an
> accused being uninitiated to the collateral
> consequence of mandatory registration requirement as a
> result of his court-martial conviction.

Miller, 63 M.J. at 459.

Last term in United States v. Rose, 71 M.J. 138, 143

(C.A.A.F. 2012), we referenced the Supreme Court's decision in

Padilla in our analysis of an ineffective assistance of counsel

claim based on defense counsel's failure to respond to the

defendant's question about the sex offender registration

consequences of his plea.  We held the failure to respond to his

client's request for information about sex offender registration

requirements amounted to "deficient performance where counsel

---

[4] See also Taylor v. State, 698 S.E.2d 384, 388-89 (Ga. Ct. App. 2010) (comparing sex offender registration requirements to the deportation consequences discussed in Padilla and holding that "registration as a sex offender, like deportation, is a 'drastic measure' . . . with severe ramifications for a convicted criminal" and "the failure to advise a client that pleading guilty will require him to register as a sex offender is constitutionally deficient performance").

14

knew that this was a 'key concern,' and where, had the request been investigated and answered, even counsel acknowledge[d] that his advice would have been different." Id. at 144.

Thus, in light of the concerns we expressed about sex offender registration consequences in Miller and Rose, and following the Supreme Court's guidance in Padilla, we hold that in the context of a guilty plea inquiry, sex offender registration consequences can no longer be deemed a collateral consequence of the plea.

b.   The Role of the Military Judge

At the time of Riley's court-martial, the Military Judges' Benchbook set forth detailed instructions for the acceptance of a guilty plea. Dep't of the Army, Pam. 27-9, Legal Services, Military Judges' Benchbook ch. 2, § II, para. 2-2-8 (Jan. 1, 2010). Paragraph 2-2-8, included the following provision:

> If the accused has pleaded guilty to an offense listed in DoD Instruction 1325.7, Enclosure 27: Listing of Offenses Requiring Sex Offender Processing, the MJ must ask the following question:
>
> MJ:   Defense Counsel, did you advise the accused prior to trial of the sex offender reporting and registration requirements resulting from a finding of guilty of (state Specification(s) and Charge(s))?
>
> DC:   (Responds.)
>
> MJ:   Take a moment now and consult again with your defense counsel, then tell me whether you still want to plead guilty? (Pause.) Do you still want to plead guilty?
>
> ACC:   (Responds.)

15

The military judge did not conduct this inquiry during Riley's providence inquiry.  Riley challenges his failure to do so and argues that there is a substantial basis in law or fact to question the plea.  The CCA dismissed this argument by holding, "[a]lthough this inquiry of the defense counsel by the military judge is stated as a requirement, we find that this is countered by the objective of the Benchbook, which serves as a publication intended only as a guide with suggestions for military judges." Riley, 2012 CCA LEXIS 175, at *9, 2012 WL 1816206, at *3.  The CCA reasoned that that military judge did not err because "chief reliance must be placed on defense counsel to inform an accused about the collateral consequences."  Id., 2012 WL 1816206, at *3 (citation and internal quotation marks omitted).

While we agree that the Benchbook is not binding as it is not a primary source of law, the Benchbook is intended to ensure compliance with existing law.  In our view, the Benchbook accurately reflects the Miller and Padilla line of cases therefore "an individual military judge should not deviate significantly from these instructions without explaining his or her reasons on the record."  United States v. Rush, 54 M.J. 313, 315 (C.A.A.F. 2001) (citation and internal quotation marks omitted).  "[M]eaningful appellate review of the trial judge's decision on this important sentencing matter requires that he articulate his reason for his decision."  Id.  In this case,

16

there is no evidence on the record as to why the military judge failed to ensure that Riley understood the sex offender registration consequences of her plea.  The record is completely devoid of any reference to sex offender registration.

"In order to ensure that pleas of guilty are not only knowing and voluntary but appear to be so, detailed procedural rules govern the military judge's duties with respect to the plea inquiry."  Soto, 69 M.J. at 306 (citing United States v. King, 3 M.J. 458, 458-59 (C.M.A. 1977)).  Here, the military judge failed to adhere to the straightforward guidance set forth in the Benchbook, which simply instructed the military judge to ensure that defense counsel complied with this court's decision in Miller as to advice concerning sex offender registration requirements.  Such an instruction is clearly consistent with a military judge's responsibilities while conducting a plea inquiry.  As "[t]he trial judge must shoulder the primary responsibility for assuring on the record that an accused understands the meaning and effect of each condition as well as the sentence limitations imposed by any existing pretrial agreement,"[5] it was incumbent upon the military judge to ensure that Riley's plea was a "knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences."  Brady, 397 U.S. at 748.  "The failure to inform

---

[5] King, 3 M.J. at 458 (citation and internal quotation marks omitted).

a pleading defendant that the plea will necessarily require registration as a sex offender affects whether the plea was knowingly made." Fonville, 804 N.W.2d at 895.

Given the lifelong consequences of sex offender registration, which is a "particularly severe penalty,"[6] the military judge's failure to ensure that Riley understood the sex offender registration requirements of her guilty plea to kidnapping a minor results in a substantial basis to question the providence of Riley's plea. Inabinette, 66 M.J. at 322.

We note that the Government argues, and the CCA held, that the burden is only on the defense counsel to notify clients about sex offender registration consequences. However, the military judge "shoulder[s] the primary responsibility" for the acceptance of a knowing plea. King, 3 M.J. at 458. Our decisions as far back as United States v. Care, 18 C.M.A. 535, 541-42, 40 C.M.R. 247, 253-54 (1969), indicate that while the defense counsel plays an important role in securing a provident plea, it is the duty of the military judge to ensure "that there is a knowing, intelligent, conscious waiver in order to accept the plea." To be sure, as we explained in Miller, defense counsel must inform the accused of these consequences, but it is the military judge who bears the ultimate burden of ensuring that the accused's guilty plea is knowing and voluntary.

---

[6] Fonville, 804 N.W.2d at 894.

United States v. Riley, No. 11-0675/AR

We therefore conclude that the military judge abused his discretion when he accepted Riley's guilty plea without questioning defense counsel to ensure Riley's knowledge of the sex offender registration consequences of her guilty plea to kidnapping a minor.  The remedy for finding a plea improvident is to set aside the finding based on the improvident plea and authorize a rehearing.  United States v. Negron, 60 M.J. 136, 143-44 (C.A.A.F. 2004); see also United States v. Williams, 53 M.J. 293 (C.A.A.F. 2000); United States v. Marsh, 15 M.J. 252 (C.M.A. 1983).[7]  A rehearing will provide Riley with the opportunity to enter a guilty plea, or plead not guilty, with full knowledge of the consequences of her decision.

## Decision

The decision of the United States Army Court of Criminal Appeals is reversed.  The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army.  A rehearing may be ordered.

---

[7] We are mindful of the requirements of Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2006) and, as in all cases where the court sets aside a finding of the court-martial, we find the error in this case materially prejudiced the substantial rights of the accused.

STUCKY, Judge, with whom RYAN, Judge, joins (dissenting):

We granted review to consider two issues: (1) whether the defense counsel provided ineffective assistance by failing to advise Appellant that her guilty plea to kidnapping a minor whose parent or guardian she was not would require her to be processed as a sex offender; and (2) whether the military judge abused his discretion in accepting her guilty plea to such an offense by failing to inquire whether she had been advised of the sex offender processing requirement. The majority does not reach issue (1) and holds that the military judge abused his discretion. I disagree.

"A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." Article 59(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 859(a) (2006). When an appellant asserts that his counsel provided ineffective assistance "[i]n the context of a guilty plea, the prejudice question is whether 'there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" United States v. Rose, 71 M.J. 138, 144 (C.A.A.F. 2012) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

"[W]e will reject the providency of a plea only where the appellant demonstrates a 'material prejudice to a substantial right.'" United States v. Hunter, 65 M.J. 399, 403 (C.A.A.F. 2008) (quoting United States v. Felder, 59 M.J. 444, 446 (C.A.A.F. 2006)).  Where, as here, an appellant seeks relief for a military judge's failure to inquire into the appellant's knowledge of a sex offender registration requirement, it makes sense to employ the same prejudice standard in determining whether an appellant was prejudiced by a military judge's error in accepting her guilty plea as we do for ineffectiveness of counsel claims.

Whether one frames the question before us as an ineffective assistance of counsel claim for failing to advise Appellant of the requirement to register as a sex offender, or as a claim that the military judge abused his discretion by failing to ensure that defense counsel had so advised Appellant prior to accepting Appellant's plea, as a matter of logic, the touchstone for granting relief has to be the same:  Appellant must demonstrate a reasonable probability that, absent the alleged error, she would not have pleaded guilty, see Hill, 474 U.S. at 59; Hunter, 65 M.J. at 403.  A mere allegation post-trial is insufficient.  See United States v. Bradley, 71 M.J. 13, 17 (C.A.A.F. 2012) (affidavit alleging that the appellant would not have pleaded guilty if the defense counsel had made the

appellant aware that the plea waived a disqualification issue is insufficient to demonstrate prejudice:  "Appellant also must satisfy a separate, objective inquiry -- he must show that if he had been advised properly, then it would have been rational for him not to plead guilty" (citing Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010))).

Even if we were to assume that it was deficient performance for the defense counsel and error for the military judge to fail to advise Appellant that sex offender processing was one of the consequences of pleading guilty to the offense charged, Appellant has not demonstrated material prejudice under the circumstances of this case.  She has not shown that, if she had been properly advised of the consequences of pleading guilty, it would have been rational for her not to do so.

Appellant was charged with kidnapping a minor whose parent or guardian she was not.  Article 134, UCMJ, 10 U.S.C. § 934 (2006).  The maximum punishment for this offense includes a dishonorable discharge and confinement for life without eligibility for parole.  Manual for Courts-Martial, United States pt. IV, ¶ 92.e. (2012 ed.).

The evidence of record established that Appellant, while dressed in medical scrubs

> entered the baby ward of Darnall Army Medical Center on Fort Hood, Texas.  Appellant then entered the maternity room of a new mother and baby, and pretended to be an

> attending nurse.  When the mother left to use the bathroom, appellant took the baby out of the room and into the hallway.  After the mother returned and noticed her baby missing, she also went out of her room into the hallway.  At this time appellant was placing the baby in a backpack and when the mother saw her, she told appellant to stop.  Appellant responded that the baby needed to be fed and gave the baby back to the mother and left the area.  Five days later, appellant was apprehended by law enforcement agents and admitted to kidnapping the baby from the hospital room.

United States v. Riley, No. 20100084, 2012 CCA 175, at *2—*3, 2012 WL 1816206, at *1 (A. Ct. Crim. App. May 11, 2012) (unpublished) (footnote omitted).  The mother identified Appellant as the perpetrator and Appellant's truck was captured on video leaving Fort Hood at the relevant time.  After Appellant's arrest, her car was seized and searched.  It contained "an infant car seat, mini diaper bag containing bottles and formula, a box of Enfamil baby formula, a package of baby swaddles, a black back pack, one knife with a 10 inch-long blade, one 8 inch-long knife, one 6 inch-long knife, a pacifier, blankets, onesies, baby hats, washcloths, bibs, towels and medical scrubs."

The affidavit of Appellant's defense counsel, in response to the allegation that her performance was deficient, is telling:

> The only concern that appellant expressed to me regarding her guilty plea was that regardless of my evaluation of her confinement risk, facing life without eligibility for parole weighed heavily upon her and that if the best cap she could get from the government was 11 years, then she wanted to take it. She explained that even if the

4

government would not agree to permit her to be sentenced by a panel, she still wanted the 11-year cap.[1] She also expressed that even if the government would not agree to fund her mother's travel to be a defense witness for her, she still wanted the 11-year cap.[2] Even understanding that I was specifically advising her against offering to plead guilty unless the government acquiesced to sentencing by panel and agreed to a seven or eight year cap, she expressed her fervent desire to receive some cap on confinement, even if she was to be sentenced by military judge alone.

With the overwhelming evidence of Appellant's guilt, her unwavering desire to accept a cap on her sentence despite the advice of her counsel to the contrary, and her willingness to give up her right to have the Government fund her mother's travel and her right to have a panel of members decide her sentence, I am convinced Appellant still would have pled guilty under the terms of the pretrial agreement, even had she known of the sex offender processing requirement. She was faced with a choice of pleading guilty and getting that cap on confinement or litigating the case -- which with the state of the evidence would almost certainly have resulted in her conviction -- and taking her chances on the sentence. Sex offender processing was a certainty in either case.[3] Appellant has failed to demonstrate

---

[1] The defense counsel secured trial by court members.

[2] The defense counsel secured funded travel for Appellant's mother.

[3] In light of the strength of the Government's case, the notion that the Government would have agreed to a pretrial agreement that would not trigger such processing is fanciful. See Missouri v. Frye, 132 S. Ct. 1399, 1409–11 (2012) (holding that to show prejudice where a plea offer has lapsed or been rejected

a material prejudice in this case -- she failed to show that if she had known she would be required to undergo sex offender processing, it would have been rational for her not to plead guilty.  Therefore, I respectfully dissent.

---

because of counsel's deficient performance, an accused must demonstrate not only a "reasonable probability that he would have accepted the lapsed plea but also a reasonable probability that the prosecution would have adhered to the agreement and that it would have been accepted by the trial court").