*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
TANG, LAWRENCE, and STEPHENS
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Cesar A. LOPEZ**
Lance Corporal (E-3), U.S. Marine Corps
Appellant

**No. 201800334**

Decided: 13 May 2020

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Jeffrey V. Munoz

Sentence adjudged 7 June 2018 by a general court-martial convened at Marine Corps Air Station Miramar, California, consisting of officer and enlisted members. Sentence approved by the convening authority: confinement for 60 days and a bad-conduct discharge.

For Appellant:
*Lieutenant Clifton E. Morgan III, JAGC, USN*

For Appellee:
*Lieutenant Joshua C. Fiveson, JAGC, USN*
*Lieutenant Commander Timothy C. Ceder, JAGC, USN*

Judge LAWRENCE delivered the opinion of the Court, in which Senior Judge TANG and Judge STEPHENS joined.

_____

**This opinion does not serve as binding precedent,
but may be cited as persuasive authority under
NMCCA Rule of Practice and Procedure 30.2.**

_____

LAWRENCE, Judge:

A panel of members with enlisted representation sitting as a general court-martial acquitted Appellant of two specifications of abusive sexual contact in violation of Article 120, Uniform Code of Military Justice [UCMJ], but convicted him of two specifications of assault consummated by a battery in violation of Article 128, UCMJ.[1] At trial, the Government, Defense, and military judge all treated assault consummated by a battery as a lesser included offense of abusive sexual contact.

Appellant asserts three assignments of error [AOEs]: (1) the military judge committed plain error in instructing the members that assault consummated by a battery is a lesser included offense of abusive sexual contact by bodily harm; (2) the military judge deprived the court of jurisdiction and made a major change to the Charge by denying trial defense counsel's [TDC] post-adjournment motion to dismiss because he erroneously instructed the members that assault consummated by a battery was a lesser included offense of abusive sexual contact, making a major change to the charged specifications; and (3) TDC were ineffective for requesting a findings instruction on assault consummated by a battery and not objecting during trial to it being added as a lesser included offense of abusive sexual contact by bodily harm. We find no prejudicial error and affirm.

## I. BACKGROUND

Several Marines gathered for dinner at a local off-base restaurant. This group included Appellant, Lance Corporal [LCpl] S, and LCpl L. As he ate dinner, Appellant drank three or four mixed drinks and some beer. When they finished dinner, Appellant, LCpl S, and LCpl L decided to go back to the barracks to drink and watch a movie.

---

[1] 10 U.S.C. § 920 (2016) and 10 U.S.C. § 928 (2012). The members also acquitted Appellant of one specification of unlawful entry in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2016).

On the drive back to base, they stopped at a liquor store and purchased alcohol. Appellant bought a fifth of whiskey to share with LCpl L, and LCpl S bought a can of malt liquor.

Upon arriving at the barracks, the three Marines settled on LCpl L's room to continue the evening's festivities. Whereas Appellant had a roommate and LCpl S lived off base, LCpl L had a two-bedroom barracks suite to himself. Because LCpl L did not have all the electronic media needed to stream the movie, they picked up a television, a gaming system, and controllers from Appellant's room and brought them to LCpl L's room, which was in the same barracks—but some distance from Appellant's room.

Watching a movie with many dancing scenes, they decided to play a drinking game. When a dancing scene would commence, Appellant and LCpl L would take a shot of whiskey and LCpl S would take a sip from his can. This game continued until LCpl S became tired and decided to go to sleep, lying down in LCpl L's bed. Shortly thereafter, LCpl L also went to bed, using the spare bedroom. More than one-half of the fifth of whiskey had been consumed, mostly by Appellant, who unsuccessfully cajoled the others to stay up and continue drinking.

In an attempt to motivate his friends to continue drinking, Appellant first went to the room occupied by LCpl S. Appellant told LCpl S that he wanted to continue drinking with him, slapped him, and asked whether he was drunk and how many fingers he was displaying. Annoyed by this behavior, LCpl S told Appellant to leave him alone, as he did not want to drink anymore and just wanted to go to sleep.

Appellant then entered the spare room occupied by LCpl L. As LCpl L lay on the bare mattress, Appellant pulled down LCpl L's outer sweatpants and shorts. LCpl L tried to hold his shorts in place, but Appellant was able to reach inside and grab LCpl L's penis and testicles with his hand. Then Appellant moved his head toward LCpl L's genital area, but LCpl L forcefully held his shorts in place and Appellant gave up and left the room.

Appellant went back to find LCpl S and tried again to get him to drink. Again he slapped him and asked him whether he was drunk and how many fingers he had raised. But this time, he touched LCpl S on the inside of his thigh. LCpl S told him to stop and pushed him away. Appellant then touched his genitals over his shorts. Again, LCpl S told him to stop and pushed him away. Nonetheless, Appellant continued. He grabbed the waistline of LCpl S's shorts and underwear with one hand and lifted them up while reaching inside with his other hand, grabbing ahold of LCpl S's penis and testicles. LCpl S angrily pushed Appellant away and emphatically yelled at Appellant to stay away from him. LCpl S got out of the bed, put on his shoes, and,

despite Appellant grabbing his arm and trying to convince him to stay, left the barracks room.

Additional facts necessary for resolution of the AOEs are included in the discussion below.

## II. DISCUSSION

### A. Appellant Waived any Instructional Error

Before trial, the Defense included the Article 128, UCMJ, assault consummated by battery instruction in their list of proposed instructions. With the Defense's express agreement, the military judge instructed the members that assault consummated by battery was a lesser included offense of abusive sexual contact by bodily harm, and the members convicted Appellant of these two lesser included offenses. After adjournment, but before the convening authority acted, the Court of Appeals for the Armed Forces [CAAF] decided *United States v. Armstrong.*[2]

In *Armstrong*, the CAAF concluded that, under the elements test of *United States v. Jones*,[3] assault consummated by a battery is not a lesser included offense of abusive sexual contact by bodily harm. Specifically, the "unlawful force or violence" element is not present in abusive sexual contact by bodily harm. The court held that a specification *could be drafted* to expressly include this element and therefore "provide[] notice that the Government would have to prove that the [offending act] was done 'with unlawful force or violence.'"[4] But the specification in *Armstrong* did not include it. Nor did the specification in Appellant's case.

In light of the ruling in *Armstrong*, both the Government and Appellant agree it was error to instruct on assault consummated by a battery as a lesser included offense of abusive sexual contact by bodily harm. Appellant argues his substantial rights were materially prejudiced by this instruction and prays this Court set aside his convictions. The Government asserts that no relief is due because Appellant invited the instructional error. Alternatively, it posits that even if the Defense did not invite error but merely forfeited the issue, this Court should grant no relief as Appellant was not prejudiced

---

[2] 77 M.J. 465 (C.A.A.F. 2018).

[3] 68 M.J. 465 (C.A.A.F. 2010).

[4] 77 M.J. at 472.

because he was on notice to defend against assault consummated by a battery.

We need not address the issue of invited error because we find Appellant waived, not forfeited, any objection to the instructions. In *United States v. Davis,* our superior court held that when counsel "expressly and unequivocally acquiesce" to instructions from the military judge, they have "waived all objections to the instructions, including in regards to the elements of the offense."[5] *Davis* further reminds us that "a valid waiver leaves no error for us to correct on appeal."[6]

Here, the Defense specifically requested the standard instruction on assault consummated by a battery from the Military Judge's Benchbook[7] in their pretrial matters. Then the TDC engaged in an extended discussion with the military judge about amending the findings worksheet to permit the members to acquit Appellant of the greater offense but to convict him of the lesser included offense. While discussing the proposed instructions, TDC made two specific requests—related to other issues—which the military judge denied. When the military judge asked whether there were any objections to the final findings instructions,[8] TDC responded, "None other than have previously been noted, sir,"[9] referring to the two unrelated requests that were denied. Further, following instructions and argument, when the military judge asked if there was any objection to the instructions or request for additional instructions, the TDC replied, "No, Your Honor."[10]

We find that Appellant affirmatively waived any error, and we decline to provide further review.[11]

---

[5] 79 M.J. 329, 331 (C.A.A.F. 2020) (internal quotation marks omitted) (citations omitted).

[6] *Id.* (citing *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009)).

[7] *Military Judges' Benchbook*, Dept. of the Army Pamphlet 27-9 at 3-54-2. (10 Sept. 2014) [Benchbook]. *See* App. Ex. XVIII at 10 (Defense Proposed Instructions of 25 May 2018).

[8] *See* App. Ex. XLIV.

[9] Record at 412.

[10] Record at 455.

[11] *See United States v. Chin*, 75 M.J. 220 (C.A.A.F. 2016).

**B. Even if Conviction of Assault Consummated by a Battery Constituted a Major Change, Appellant Failed to Timely Object and Can Show No Prejudice**

Pursuant to Rule for Court-Martial [R.C.M.] 603(d), a major change "may not be made over the objection of the accused unless the charge or specification affected is preferred anew." Appellant contends the military judge impermissibly constructively amended the abusive sexual contact specifications, effecting major changes over Defense objection without re-preferral of the specifications, by instructing on assault consummated by a battery as a lesser included offense. Appellant argues that his post-adjournment objection to this major change, lodged in a post-trial Article 39(a) session after the CAAF released Armstrong, was timely. As a result, citing *United States v. Reese*,[12] he argues the court-martial lacked jurisdiction and the specifications must be dismissed. We disagree.

*1. The legal standard of review*

We review de novo questions of statutory interpretation, namely whether a change to a charge or specification is major or minor.[13] We also review de novo the legal questions whether Appellant waived or forfeited an issue and whether an objection was timely.

*2. Analysis*

Appellant's argument here centers on both *Reese* and *Armstrong*.

In *Reese*, the CAAF reviewed a change made to a charge because of a conflict between the misconduct alleged in the specification and the victim's testimony at trial. The specification alleged Reese licked the victim's penis with his tongue, but the victim testified at trial that the appellant actually touched the victim's penis with his hand. The trial counsel moved to amend the specification to allege that Reese touched the victim's penis with his hand. Reese's counsel objected, arguing this would constitute a major change. The military judge ruled the change was minor, permitted the amendment, and convicted Reese of the amended specification. On appeal, the CAAF held that the change was major and because it was not preferred anew and Reese objected, pursuant to R.C.M. 603(d), the court-martial lacked jurisdiction to

---

[12] *United States v. Reese*, 76 M.J. 297, 300 (C.A.A.F. 2017) (citing *United States v. Atchak*, 75 M.J. 193, 195 (C.A.A.F. 2016)).

[13] *Id.*

try him on the amended charge. Reese was entitled to have the charge dismissed without having to show prejudice.

In *Armstrong,* after holding that assault consummated by a battery was not a lesser included offense of abusive sexual contact by bodily harm, the CAAF addressed Armstrong's jurisdictional argument. Armstrong sought to extend the holding in *Reese* "by analogizing the court-martial's consideration of assault consummated by a battery to a major change to the Specification of abusive sexual contact by causing bodily harm."[14] Armstrong argued that his conviction for assault consummated by a battery constituted an impermissible major change to the specification. As the charge was not preferred anew, and because he objected, he claimed the court-martial lacked jurisdiction and therefore the charge should be dismissed without a showing of prejudice. The court also held that "an *incorrect* instruction on a lesser included offense might have some similarities to a major change in a specification."[15] However, the court did not have to decide whether those "similarities" justified a similar result as *Reese* because the court found that Armstrong "did not object to the lesser included offense instruction."[16]

In *Armstrong,* when first asked whether there were any lesser included offenses of abusive sexual contact by bodily harm, the defense counsel said no. But then the "defense counsel requested findings instructions that would be relevant if the court-martial considered assault consummated by a battery to be a lesser included offense of abusive sexual contact by causing bodily harm,"[17] such as mistake of fact and the definition of unlawful force. Although Armstrong's counsel did not specifically request the Benchbook instruction on assault consummated by a battery, they "[took] no position on"[18] that issue when the military judge later asked whether it was a lesser included offense of abusive sexual contact by bodily harm. On these facts, the CAAF found Armstrong did not object.

Appellant attempts to distinguish the facts of his case from *Armstrong* because he did object—after adjournment—in a post-trial Article 39(a) session after *Armstrong* was released. He also cites R.C.M. 905(e), which

---

[14] 77 M.J. at 473.

[15] *Id.* (emphasis in original).

[16] *Id.* at 473-74.

[17] *Id.* at 468.

[18] *Id.*

excepts jurisdictional objections from those which must be made before adjournment. As such, he argues his post-adjournment objection was timely and his case is distinguishable from *Armstrong.*

Whether Appellant can prevail on this argument turns on the question of whether his objection, technically made during "trial," was timely for the purposes of objecting to any resulting constructive major change.

### 3. Timeliness of the objection

The Government argues that the plain language of R.C.M. 603(d), providing that "[c]hanges . . . other than minor changes may not be *made over* the objection of the accused unless the charge or specification is preferred anew," requires that the objection be made "before or at least contemporaneously with" the proposed change.[19]

By contrast, Appellant cites our sister court's opinion in *United States v. Stout*[20] to argue that his objection was timely.[21] In *Stout*, the case had been remanded following an opinion from the Army Court of Criminal Appeals [ACCA]. The Government changed the date range in three specifications on 4 November 2014, and they were referred to a general court-martial by the convening authority on 17 November 2014. Stout objected before trial, in the course of motions practice, and neither the ACCA nor the CAAF reviewed the timeliness of his objection. Rather, his case was resolved based on a plain reading of Article 34, UCMJ, which permits amendments to charges before referral.

Citing *Stout,* Appellant argues that an objection need not be made before the major change in order to preserve an appellant's rights under R.C.M. 307(d). Appellant correctly notes that Stout did not object to the pre-referral changes until 30 January 2015, a full 87 days after the specifications were amended. Stout's delay of 87 days is nearly twice as long as the 44-day delay in this case between the announcement of findings and TDC's post-trial objection. However, we do not find that the *number* of days is the determinative factor. Nor do we find that an objection must necessarily be lodged before the change is made or contemporaneously with the change.

---

[19] Appellee's Answer of 16 Jan 2020 at 26 (emphasis added).

[20] No. 20120592, 2018 CCA LEXIS 174 (A. Ct. Crim. App. Apr. 9, 2018) (unpub. op.), *aff'd*, 2019 CAAF LEXIS 648 (C.A.A.F. 2019).

[21] *See* Appellant's Reply Brief at 4-5.

Rather than fix a bright-line rule of a specific number of days within which an objection may post-date a change to still be timely, we look to the operative stage of the proceeding and the context. The objection in *Stout* was made in a *pretrial* Article 39(a), UCMJ, hearing. While it is not clear whether the objection was lodged at arraignment or a subsequent session, it was certainly at the beginning stages of the process and *long* before the members returned findings. The rehearing on its merits did not commence until seven months after the objection was made.

In this case, Appellant argues:

> If the Government's quibble is with the fact that defense counsel's preserved objection was made in a post-trial motion to dismiss, as discuss [sic] *supra*, trial defense counsel could not have objected until a change to the specification was made. As the Government acknowledges, "the Members' announcement of their findings effected the 'constructive changes' at issue," which did not occur until the very end of trial.[22]

This argument misses the point. Although the members' findings effected any resulting constructive major change, their findings were the direct result of both the instructions given and the findings worksheet provided to guide their announcement. As to both of those aspects of the trial, Appellant specifically requested the military judge to treat assault consummated by a battery as a lesser included offense. We analyze Appellant's objection or failure to object at this moment in time, not later. Looking at Appellant's actions, we find that he not only failed to object to the possibility of being convicted of the offense of assault consummated by a battery, but that he was an active participant in promoting that possible case outcome. His earlier actions—inviting the exact result that was ultimately reached—are not negated by his later post-adjournment attempt to object to the very course of action he earlier sought.

The *Manual for Courts-Martial* contains many requirements that objections be timely.[23] Rule for Court-Marital 920(f) requires objections concerning instructions to be made "before the members close to deliberate." This is for a reason and must carry some consequence.

---

[22] Appellant's Reply Brief at 4-5 (citing Appellee's Br. at 27.).

[23] *See* Mil. R. Evid. 103(a)(1)(A) (requiring timely objection to admission of evidence); *see also* R.C.M. 919(c) (requiring objection to improper argument before findings instruction, or else waiver applies).

A timely objection is required to "prevent[] a defense counsel from remaining silent, making no objection, and then raising the issue on appeal for the first time, well after the military judge could have cured the problem with an instruction to disregard or a limiting instruction."[24] Although the quoted passage refers to waiver in the context of improper argument, the same principle holds true here. While Appellant seeks to reframe this issue from one of waiver of instructional error to one of objection to a major change (which, as a jurisdictional error, can be made after adjournment), we find the first issue controls the second. We further find Appellant's response to the first issue (affirmatively asking for the lesser included offense instruction) to be controlling as to the second issue as acceptance of any resulting constructive major change. To have any impact on the outcome, an objection must be lodged before the resulting harm (from an appellant's point of view) would ensue.

The very concept of waiver would be rendered meaningless and inconsequential if counsel were simply permitted to step in well *after* encountering the operative fork in the road, "un-waive" previously waived matters, and categorically undo all previous positions advanced before the court-martial to allow later argument on appeal. As the CAAF made clear in *Davis,* waiver reflects that counsel has made a knowing choice, potentially electing to pursue a trial strategy—as was done by TDC throughout this trial—that may offer significantly less punitive exposure for their client. Further, our superior court has found that "[b]y 'expressly and unequivocally acquiescing' to the military judge's instructions, [an] [a]ppellant waive[s] all objections to the instructions, *including in regards to the elements of the offense.*"[25] This is true even though Appellant did not specifically frame his request for the lesser included offense instruction as a knowing waiver to any resulting constructive major change that would result from conviction of that offense.

While Appellant's objection to the constructive major change was lodged in a later session and that session was by definition part of the same trial,[26] that objection stood in stark contrast to every other statement and action of TDC concerning the applicability of the putative lesser included offense. As

---

[24] *United States v. Walker,* 50 M.J. 749, 752-53 (N-M. Ct. Crim. App. 1999) (citing *United States v. Fisher*, 21 M.J. 327, 328 (C.M.A. 1986)).

[25] *Davis*, 79 M.J. at 331 (emphasis added) (quoting *United States v. Smith*, 2 C.M.A. 440, 442 (1953)).

[26] *See* R.C.M. 803.

the objection was untimely, the issue is not jurisdictional, and therefore we consider whether Appellant suffered material prejudice.

*4. Appellant suffered no material prejudice to his right to notice when his trial strategy effectively conceded assault consummated by a battery*

When considering whether an appellant suffered material prejudice resulting from "incorrect instructions regarding lesser included offenses," we consider the right to notice.[27] As our superior court has stated, "prejudice can be caused by not having notice as to the offense that must be defended against."[28] Much like in *Armstrong*, "the manner in which a case was contested may reveal whether an accused was prejudiced by an erroneous consideration of an offense that is not actually a lesser included offense."[29] Here, TDC not only affirmatively waived any objection on multiple occasions, but their trial strategy effectively revolved around conceding the acts that made up the putative lesser included offense. The Defense scarcely disputed the allegation from two separate victims that Appellant had succeeded in touching their genitals while they resisted his efforts. The only question for the members was whether Appellant's voluntary intoxication negated his ability to form the requisite specific intent for abusive sexual contact.

From the pretrial stage forward, Appellant understandably sought to steer this proceeding away from the abusive sexual contact to the far less serious offense of assault consummated by a battery. The Defense included assault consummated by a battery on their own list of requested instructions.[30] In the last paragraph of their opening statement, Defense laid out their theory of the case, saying:

> Now, at the end of all of this, you may find him guilty of assault consummated by a battery. But ultimately, once you hear all the evidence, you are going to see that because he was so drunk he did not know what he was doing. That means that he did not have the specific intent that would be necessary to

---

[27] *Armstrong,* 77 M.J. at 473.

[28] *Id.* (internal quotation marks omitted) (quoting *United States v. Miller*, 67 M.J. 385, 388 (C.A.A.F. 2009)).

[29] *Id.* (citing *United States v. Oliver*, 76 M.J. 271, 275 (C.A.A.F. 2017)).

[30] *See* App. Ex. XVIII at 10 (Defense Proposed Instructions of 25 May 2018).

make this a sexual crime. And the verdict, in that respect, is
not guilty to abusive sexual contact.[31]

In an Article 39(a), UCMJ, hearing following the conclusion of the De-
fense case, the instructions were taking their final shape. Appellant's counsel
again explicitly agreed the military judge should instruct the members that
assault consummated by a battery was a lesser included offense.

> MJ: All right. Now, with regard to the LIO of abusive sexual
> contact, that is to say assault consummated by a bat-
> tery, we also discussed last night whether Instruction
> 5-11-2, ignorance or mistake when only general intent is
> in issue, is a proper instruction, and we agree that is not
> proper.
>
> Defense, do you agree with that?
>
> DC: Yes, sir.[32]

Further, to the military judge's question asking if Appellant's counsel found
the findings worksheet objectionable, TDC replied:

> I do not. I do not believe it is objectionable. I would say our
> preference would be to add a (c) option for the Charge with as-
> sault consummated by battery on there. . . . I will state I do not
> find this findings worksheet in its current form objectionable,
> sir.[33]

The military judge gave his final findings instructions to the members
and both Government and Defense counsel responded that they were satis-
fied.

> MJ: All right. Option D of the examples there. That speaks
> to the lesser included offense. And that's where—if you
> remember earlier in the instructions as to Specifications
> 1 and 2 of Charge I, what the instructions say is, If you

---

[31] Record at 210.

[32] Record at 401-02.

[33] Record a 406. The TDC was referencing a "(c) option" the military judge pro-
posed in an email to the parties that would further address the potential for mixed
findings. The findings worksheet ultimately featured four options for the abusive
sexual contact specifications, including not guilty, guilty, guilty by exceptions, and
option (d), which stated "Not Guilty, but Guilty of Assault Consummated by a
Battery, in violation of Article 128." App. Ex. XXI at 1.

> find that the accused is not guilty of the charged offense, abusive sexual contact, then you must consider whether he is guilty of the lesser included offense of assault consummated by a battery; and that's what option D give[s] you. It gives you the option, if you so find, not guilty of the charged offense, abusive sexual contact, but guilty of assault consummated by a battery, okay?
>
> . . . .

MJ: Do counsel for either side object to the question—to the instructions given or request additional instructions?

TC: No, Your Honor.

DC: No, Your Honor.[34]

The clear Defense strategy was to negate the "intent to gratify the sexual desire of any person" element in Article 120, UCMJ, necessary to convict Appellant of abusive sexual contact. While each of the victims had also been drinking that night, their memory of being forcibly touched by Appellant was clear and there was little room to attack their testimony. In both the oral wire intercept and his interrogation, Appellant said that, due to his voluntary intoxication, he had no memory of any of the pertinent events. In the oral wire intercept, Appellant even appeared to accept the premise of LCpl L's accusation. Appellant made repeated statements acknowledging, rather than disputing, the allegations, such as, "I know and I understand and I'm accepting that," and "I know where I f[***]ed up from you telling me. I know."[35]

In cross-examination of Government witnesses, TDC repeatedly sought details to highlight Appellant's extreme consumption of alcohol to the point of vomiting and blacking out. The Defense had the same focus in its direct examination of its sole witness in its case in chief. The Defense expert in forensic psychiatry testified that it was probable that Appellant was in the severe intoxication range which could lead to both short and long-term memory loss. The Defense expert suggested Appellant may not have been able to form the requisite intent when he touched his victims' genitals.

The Defense's strategy was consistent. From their pre-trial request for the assault consummated by a battery instruction, through their opening state-

---

[34] Record at 454-55.

[35] App. Ex. XVI at 14-15; *see also* Pros. Ex. 4 (audio recording).

ment, witness examinations, and persistent agreement with including the instruction and amending the findings worksheet, the strategy was clear. They concentrated all efforts on negating Appellant's specific intent while tacitly conceding the acts that constituted assault consummated by a battery. We find that Appellant was on notice that he should defend against assault consummated by a battery and that he was not materially prejudiced by the erroneous instruction.

## C. Ineffective Assistance of Counsel

Appellant contends that by requesting the assault consummated by a battery instruction and waiving objection to the instructions, his TDC were deficient and that this deficiency resulted in his conviction of offenses with which he was never charged.

### 1. The legal standard of review

We review ineffective assistance claims de novo.[36] In *Strickland v. Washington*, the Supreme Court held that, pursuant to the Sixth Amendment to the United States Constitution, criminal defendants are entitled to representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms."[37] Our assessment of that representation calls for us to employ a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[38] In this "highly deferential" review, we must respect the "wide latitude counsel must have in making tactical decisions."[39] In order to rebut the presumption of competence, there must be a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[40] To prevail, Appellant must show that: (1) his TDC were deficient in their performance; and (2) there is a reasonable probability that their deficient performance caused him prejudice.[41] To establish prejudice,

---

[36] *United States v. Harpole*, 77 M.J. 231, 236 (C.A.A.F. 2018).

[37] *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

[38] *Id.* at 689.

[39] *Id.* at 689-90.

[40] *United States v. Dewrell*, 55 M.J. 131, 133 (2001) (quoting *Strickland*, 466 U.S. at 687).

[41] *Strickland*, 466 U.S. at 687.

Appellant must show "that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable."[42]

*2. Discussion*

As our superior court observed in *Armstrong*, "[d]espite our conclusion that the error was clear or obvious, we recognize that the military judge and counsel had limited guidance in addressing this issue."[43] Between the CAAF's decision in *Jones* and the court's opinion in *Armstrong,* there had been substantial litigation on lesser included offenses under Article 120, UCMJ. But no case resolved the question whether assault consummated by a battery was a lesser included offense of abusive sexual contact by bodily harm. Additionally, even in *Armstrong,* the CAAF noted that the 2016 *Manual for Courts-Martial* appendix of lesser included offenses noted that assault consummated by a battery was *possibly* a lesser included offense of abusive sexual contact "[d]epending on the factual circumstances in each case."[44] Given this uncertainty in the law, and the fact that the trial counsel and an experienced military judge agreed that assault consummated by a battery was a lesser included offense, we do not find that TDC's performance was ineffective.

Moreover, TDC had several tactical reasons for suggesting the lesser included offense. First, assault consummated by a battery has a maximum confinement of only six months. This makes it less likely to be considered a felony offense in most civilian jurisdictions, where a felony—typically carrying several repercussions in civic life—is often defined as a crime punishable by more than one year of imprisonment. Second, assault consummated by a battery carries a substantially lower maximum punishment to confinement—6 months rather than 7 years—meaning Appellant's exposure for both offenses was 1 year as opposed to 14 years. Third, conviction of assault consummated by a battery only exposed Appellant to a bad-conduct discharge, not the dishonorable discharge available had he been convicted of abusive sexual contact. Fourth, the pertinent Department of

---

[42] *Id.*

[43] *Armstrong*, 77 M.J. at 473 n.10.

[44] *Armstrong,* 77 M.J. at 473 n.10. (alteration in original) (quoting *MCM*, Lesser Included Offenses, app. 12A at A12A-1, A12A-4 (2016 ed.)).

Defense Instruction[45] lists abusive sexual contact as an offense requiring sex offender registration processing, but it does not require such processing for assault consummated by a battery.[46] Our superior court has long recognized the "lifelong" consequences of sex offender registration—though collateral— are so "severe" that the providence of an accused's guilty plea is questioned and a military judge abuses his or her discretion by failing to ensure the accused is on notice of sex offender requirements before pleading guilty to a qualifying offense.[47] Fifth, a conviction for assault consummated by a battery would on its face provide a less stigmatizing criminal record simply because the sexual nature of his offense would not be apparent from the nature of the UCMJ article.

Finally, proof of Appellant's guilt was strong. It was a wise tactical decision to give the members an alternative, less severe charge on which to convict Appellant. There was no conceivable approach by which TDC could contest the physical acts. LCpls L and S immediately reacted, told one another of Appellant's assaults, and maintained consistent statements throughout the process. They had no apparent motive to fabricate. Their allegations were not disputed by Appellant's own statements, in which he did not admit his actions but conceded that if LCpls L and S said he touched them, he must have touched them.

The TDC likely perceived that they would have a difficult time negating Appellant's specific intent. Although there was evidence Appellant was highly intoxicated, there was also evidence that undercut Appellant's claim that he did not remember what happened. Whereas Appellant told the victims he had been in his own room all night, the evidence shows he did remember being in LCpl L's room. He woke up the next day and went to LCpl L's room to gather the rest of his property—a game controller, shoes, and his phone. He knew exactly where he had left his property, meaning he remembered where he had been. He also admitted during the oral wire intercept and his NCIS interrogation that he had been in LCpl L's room. Members

---

[45] Dep't of Defense Instruction 1325.07, Administration of Military Correctional Facilities and Clemency and Parole Authority, Appendix 4 to Enclosure 2 (11 Mar 2013).

[46] Although sex offender registration is accomplished at the state level, and abusive sexual contact may not require registration in a given state, the DoD Instruction requires notification to the convict and notification to the convict's state of release for abusive sexual contact but not assault consummated by a battery.

[47] *United States v. Riley,* 72 M.J. 115, 122 (C.A.A.F. 2013).

could find Appellant knowingly lied about not being in LCpl L's room because he was conscious of his own guilt and in fact remembered touching LCpls L and S. That awareness and consciousness of guilt would undercut the entire Defense strategy.

In addition, we believe TDC faced an uphill battle convincing members that Appellant did not know what he was doing (lacking specific intent) when he touched the two victims' genitals. Appellant touched LCpl S on the inside of his thigh and his genitals over his shorts, not non-erogenous zones. Appellant forcibly reached into both victims' clothing to touch their genitals. He was able to overcome their resistance. He didn't fumble about but quickly reached for the testicles and penis of each of his victims. LCpl L testified Appellant moved his head toward his genitals; LCpl S testified that Appellant wrapped his hand around his penis and stroked it with a "masturbating motion."[48] Given the convincing testimony from two victims, we believe that, without a lesser included offense, the members would have been hard pressed to fully acquit Appellant by finding he lacked specific intent. In all aspects, the evidence against Appellant was very strong.

Facing such strong evidence of guilt on serious sexual charges, it was a reasonable course of action to request instruction on the purported lesser included offense. A conviction was likely, and a conviction on less severe offenses was preferable. While Appellant argues based on the findings that he was prejudiced in that he was convicted of some offenses rather than no offenses, the TDC could not have known with certainty before trial that the members would ultimately find that Appellant lacked the requisite specific intent. Although negating that intent was a wise strategy, it was by no means certain to result in acquittal in the absence of lesser included offenses. Pursuing a strategy to put a lesser offense on the charge sheet was not an unwise tactical decision.

In appreciation of the close call facing TDC, Appellant's counsel chose to employ a strategy that essentially conceded the assault consummated by a battery and put that offense on the findings worksheet as an alternative to likely conviction of a more serious offense.

While all parties erred in approaching assault consummated by a battery as a lesser included offense of abusive sexual contact, prior to the later release of *Armstrong*, this was neither settled nor especially clear. Notwithstanding this error, allowing the members a reasonable landing area for

---

[48] Record at 288.

uncontroverted offenses was an effective strategy that ultimately worked to the benefit of the Appellant.

We find that TDC were not ineffective.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and the sentence are correct in law and fact and that there is no error materially prejudicial to Appellant's substantial rights. Arts. 59, 66, UCMJ. Accordingly, the findings and the sentence as approved by the convening authority are **AFFIRMED**.

Senior Judge TANG and Judge STEPHENS concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court