# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40191**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Domingo J. CABUHAT, Jr.**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 13 September 2023[1]

———————————

*Military Judge*: Charles E. Wiedie (motions and arraignment); Willie J. Babor (trial); Sterling C. Pendleton (entry of judgment).

*Sentence*: Sentence adjudged 16 June 2021 by GCM convened at Ramstein Air Base, Germany. Sentence entered by military judge on 10 August 2021: Dishonorable discharge, confinement for 30 years, and reduction to E-1.

*For Appellant*: Major Heather M. Caine, USAF (argued); Colonel Anthony D. Ortiz, USAF; Major Ryan S. Crnkovich, USAF; Mark C. Bruegger, Esquire.

*For Appellee*: Captain Jocelyn Q. Wright, USAF (argued); Colonel Naomi P. Dennis, USAF; Lieutenant Colonel Thomas J. Alford, USAF; Major John P. Patera, USAF; Mary Ellen Payne, Esquire.

*Amicus Curiae for Appellant*: Hannah Turner (law student, argued); Charles E. Watkins, Jr., Esquire (supervising attorney); Angelle Boudreaux (law student); Broxton Lance Harvey, Jr. (law student)—The Louisiana State University Paul M. Hebert Law Center, Baton Rouge, Louisiana.

———————————

[1] The court heard oral argument in this case on 22 March 2023 at the Louisiana State University Paul M. Hebert Law Center in Baton Rouge, Louisiana, as part of this court's Project Outreach Program.

*Amicus Curiae for Appellee*: Chad Thornton (law student, argued); Jeffrey C. Brooks, Esquire (supervising attorney); John R. Arboleda (law student); Kimberly Cook (law student)—The Louisiana State University Paul M. Hebert Law Center, Baton Rouge, Louisiana.[2]

Before THE COURT EN BANC.

Senior Judge CADOTTE delivered the opinion of the court, in which Senior Judge RICHARDSON, Senior Judge ANNEXSTAD, Judge MERRIAM,[3] Judge DOUGLAS, Judge MASON, Judge KEARLEY, and Judge WARREN joined. Chief Judge JOHNSON filed a separate dissenting opinion, in which Judge GRUEN joined.

———————————

**PUBLISHED OPINION OF THE COURT**

———————————

CADOTTE, Senior Judge:

A military judge sitting alone as a general court-martial convicted Appellant of four specifications of sexual abuse of a child under the age of 16 years on divers occasions;[4,5] one specification of making an indecent recording on divers occasions; one specification of obstruction of justice; and five specifications of viewing or possessing child pornography on divers occasions, in violation of Articles 120b, 120c, 131b, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920b, 920c, 931b, 934.[6] The military judge sentenced Appellant to

---

[2] The *Amicus Curiae* supervising attorneys for Appellant and Appellee were both properly admitted to practice before this court.

[3] In accordance with Rule 7(c) of the Joint Rules of Appellate Procedure for Courts of Criminal Appeals, Judge Merriam, a reserve component appellate military judge, was duly assigned by the Chief Appellate Military Judge to participate in this matter and was deemed to be in regular active service with respect to this matter.

[4] Specifications 1, 2, 4, and 5 of Charge I each alleged Appellant sexually abused his daughter, a child under the age of 16 years, on divers occasions. In this opinion, Specification 5 is discussed further and is the only specification in issue.

[5] Appellant was acquitted of a fifth specification alleging a sexual act upon a child who had not attained the age of 12 years, with the intent to gratify his sexual desires.

[6] References to Articles 120b and 120c, UCMJ, 10 U.S.C. §§ 920b, 920c, are to the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*). Unless otherwise noted, all other references in this opinion to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

a dishonorable discharge, confinement for 30 years, and reduction to the grade of E-1.

Appellant raised three issues on appeal: (1) whether the military judge abused his discretion by accepting Appellant's guilty plea to sexual abuse of a child by indecent conduct (Specification 5 of Charge I; hereafter, "Specification 5") done in the "presence" of that child without defining "presence" to mean the child had to be aware of the indecent conduct; (2) whether Appellant's conviction for Specification 5 is legally and factually insufficient; and (3) whether his sentence is inappropriately severe.[7] We ordered oral argument on three additional issues relating to Appellant's assignments of error: (4) whether Appellant's guilty plea by exceptions to Specification 5 was provident; (5) whether Appellant's conviction for Specification 5, to include the words, "at or near Dyess Air Force Base, Texas and," to which Appellant pleaded not guilty, should be set aside if Appellant's guilty plea is found improvident; and (6) whether Appellant's conviction for Specification 5, including the words to which Appellant pleaded not guilty, is legally or factually insufficient because the evidence did not demonstrate when and where the charged conduct occurred. We also considered an additional issue, not raised by Appellant, that was identified during this court's Article 66(d), UCMJ, 10 U.S.C. § 866(d), review: (7) whether Appellant is entitled to relief for facially unreasonable appellate delay in accordance with *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006), or *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002).

We address issues (1), (4), and (5) together as they concern issues related to Appellant's guilty plea. Likewise, we consider issues (2) and (6) together as they relate to the legal and factual sufficiency of Appellant's conviction. We find Appellant's convictions both legally and factually sufficient, and no error materially prejudicial to the substantial rights of Appellant occurred. As discussed later, our opinion in *United States v. Burkhart*, 72 M.J. 590 (A.F. Ct. Crim. App. 2013), is overruled. We affirm the findings and sentence.

## I. BACKGROUND

The investigation into Appellant's crimes began after his 12-year-old daughter reported to her middle school guidance counselor that Appellant had sexually touched her. Appellant began touching his daughter on the breasts, thighs, and buttocks with his hands to gratify his sexual desires in 2014 while he was stationed at Dyess Air Force Base (AFB), Texas. This opinion primarily focuses on Appellant's plea of guilty, by exceptions, to sexual abuse of his

---

[7] Appellant personally raised issue (3) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

daughter, a child under the age of 16, as alleged in Specification 5, and the military judge's finding of guilty as charged.

At his court-martial, Appellant entered a plea of guilty by exceptions to Specification 5, which alleged Appellant

> did, at or near Dyess [AFB], Texas, and at or near Ramstein Air Base, Germany, on divers occasions, between on or about 13 February 2014 and on or about 10 September 2019, commit a lewd act upon [his daughter], a child who had not attained the age of 16 years, by engaging in indecent conduct, to wit: rubbing his penis with his hand, intentionally done in her presence, which conduct amounted to a form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations.

Appellant entered a plea of guilty to this specification except for the words "at or near Dyess Air Force Base, Texas and." To the excepted words, Appellant pleaded not guilty. In findings, the Government presented evidence on the excepted words. The military judge ultimately found Appellant guilty of the entire specification, to include the excepted words.

## II. DISCUSSION

### A. Providence Inquiry

The crux of Appellant's argument on appeal is that the military judge abused his discretion by accepting Appellant's guilty plea, and consequently that the guilty plea was not provident, because the words "intentionally done in her presence" as alleged in Specification 5 required the child-victim to be aware of the charged indecent conduct. We find the military judge did not abuse his discretion in accepting Appellant's guilty plea and Appellant's plea of guilty was provident.

#### 1. Additional Background

During his guilty plea inquiry, Appellant explained he rubbed his penis with his hands on six or seven different occasions in his daughter's presence while he believed she was asleep. Appellant engaged in the following colloquy with the military judge:

> [Appellant]: After I was stationed at Ramstein Air Base on 13 August 2018, I lived in my house at . . . Miesenbach. It was about [eight] minutes from Ramstein Air Base, with my wife and daughter. There was approximately [six to seven] times of going to [my daughter's] room where I thought she was sleeping. I'd sit

4

on the edge of the bed without saying anything or turning on the lights. I placed my hand in my pants and masturbated when I removed my penis from my pants. I masturbated while I sat on the end of the bed. Sometimes I would also reach out and rub her legs with my other hand. Sometimes I would also take photographs of her with my other hand as well. On [one other] occasion . . . that occurred in my bedroom where she was laying on the bed watching television, I also rubbed my penis with my other hand. I did these actions to gratify my sexual desire. My actions were immoral and grossly vulgar. I was ashamed for my actions and knew everything that I was doing was immoral. This was wrong because she shouldn't be exposed to anything like this. She's my daughter. I should be trying to protect her and not hurt her. I knew that it was unacceptable and illegal behavior because I never shared this information with anyone. Sexual acts should only be between consenting adults. In doing that next to her was exposing her to sexual acts that she was too young to be exposed to.

While at or near Ramstein Air Base, Germany, I rubbed my penis with my hand intentionally in my daughter's presence. This conduct amounted to [a] form [of] immorality relating to sexual impurity [which] is grossly vulgar, obscene and repugnant to common propriety. It also depr[a]ves morals with respect to sexual relations. She was under the age of 16 at the time.

[Military Judge (MJ)]: So this all occurred in your house . . . in Miesenbach; is that correct?

[Appellant]: Yes, sir.

MJ: And do you agree that is at or near Ramstein Air Base?

[Appellant]: Yes, sir.

MJ: And this happen [sic] then after August of 2018?

[Appellant]: Yes, sir.

MJ: And at this time how old was [your daughter]?

[Appellant]: So 2018 she would be --

MJ: So beginning in August of 2018 she would have turned 11 [prior to this date]; is that correct?

[Appellant]: Yes.

MJ: And so then she was 11. And how long did this continue? I mean you said 6 to 7 times; is that correct?

[Appellant]: Yes, sir.

MJ: Was it -- over the course of how long? When did it first begin in Ramstein?

[Appellant]: Around October 2018.

MJ: So she was still 11 at the time. How long would you say that it continued until?

[Appellant]: It would be once a month for 6 or 7 months -- 6, 7 or 8 months.

MJ: So until anywhere from April to June of 2019?

[Appellant]: Yes, Sir.

. . . .

MJ: And this indecent conduct, describe it for me the first time that you can remember it happening in Miesenbach[.]

[Appellant]: One of the first times that I can remember was in her bedroom. She was asleep. I touched her legs and started masturbating, sir.

MJ: When you were masturbating did you -- where was your penis?

[Appellant]: Right hand, sir.

MJ: And was it inside or outside of your pants?

[Appellant]: Sometimes inside, sometime outside.

MJ: Were you rubbing your penis?

[Appellant]: Yes, sir.

MJ: Were you rubbing your penis intentionally?

[Appellant]: Yes, sir.

MJ: And were you doing it in her presence?

[Appellant]: Yes, sir.

MJ: Now is there something about in regards to rubbing your penis in her presence, was that an intentional setup? Let me get there -- what's different between this and you potentially rubbing your penis in the bathroom for example? Why -- why were you rubbing your penis in your daughter's room while you were touching her?

[Appellant]: Because I was aroused by her.

MJ: And you were aroused by this conduct?

[Appellant]: Yes, sir.

MJ: Is this vulgar?

[Appellant]: Yes, sir.

MJ: How so? I'm going to ask you the same question and you might want to talk to your lawyers about this -- you're charged with conduct which amounted to a form of immorality relating to sexual impurity, which you've talked about, which is grossly vulgar, obscene and repugnant to common propriety. So --

[Appellant]: She's my daughter, sir. I shouldn't be doing things like that in front of her. It's not normal to society. I should be protecting her, sir. I shouldn't have done it while she was sleeping. I shouldn't have done it at all.

MJ: Okay.

[Appellant]: I shouldn't have my penis out around my daughter. You shouldn't be doing that to people you love.

MJ: Would you agree that it's vulgar?

[Appellant]: Yes, sir.

MJ: Was it obscene?

[Appellant]: Yes, sir.

MJ: Was repugnant?

[Appellant]: Yes, sir.

MJ: That was the first time. How many times did you say it happened in total?

[Appellant]: There are some months where it happened twice. Some months where it never happened. All I can think of is 6 to 7 times, sir.

MJ: And were each of these times intentional?

[Appellant]: Yes, sir.

MJ: And but for the one time that it happened in your bedroom that you discussed, did these all happen in her room?[8]

[Appellant]: Yes, sir.

MJ: Was she asleep all the time?

[Appellant]: When she was in her room, yes. When she was in my room, no. When she was in the living room, no, sir.

MJ: Do you agree that even though she was asleep for some of these occasions, those occasions where she was asleep it was in her presence?

[Appellant]: Yes, sir.

MJ: Is it still wrongful even though she was asleep?

[Appellant]: Yes, sir.

MJ: And in each of these times, what was your intent in touching your penis in her presence?

[Appellant]: To arouse myself, sir.

During the guilty plea inquiry, the military judge informed Appellant of the elements of Specification 5. Appellant said he understood the elements and definitions.[9] At no point during the providence inquiry did the military judge define "in the presence" of a child to Appellant, nor did Appellant request a definition. Instead, the subject of Appellant's "awareness" of his daughter's presence during his alleged indecent acts arose in the context of the colloquy with Appellant, in which he expressed that he was aware of his daughter's presence during each alleged indecent act. The military judge did not advise Appellant during the providence inquiry that his daughter must have been aware of the indecent acts in question, nor did Appellant admit his daughter was aware on any of those occasions that he was masturbating.

---

[8] Previously, during the providence inquiry on another specification, Appellant described one occasion in his bedroom during which his daughter was awake watching television while he masturbated.

[9] The military judge previously had defined for Appellant relevant legal terms; Appellant stated he did not need the military judge to re-read them to him.

**2. Law**

### *a. Guilty Plea*

We review a military judge's decision to accept an accused's guilty plea for an abuse of discretion. *United States v. Riley*, 72 M.J. 115, 119 (C.A.A.F. 2013) (citing *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). The military judge's legal conclusion about the providency of a plea is reviewed de novo. *United States v. Harris*, 61 M.J. 391, 398 (C.A.A.F. 2005).

"The military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea." Rule for Courts-Martial (R.C.M.) 910(e). "The military judge must ensure there is a basis in law and fact to support the plea to the offense charged." *United States v. Soto*, 69 M.J. 304, 307 (C.A.A.F. 2011) (citing *Inabinette*, 66 M.J. at 321–22) (additional citation omitted). "[A] military judge must elicit actual facts from an accused and not merely legal conclusions." *United States v. Price*, 76 M.J. 136, 138 (C.A.A.F. 2017). "A guilty plea is provident if the facts elicited make out each element of the charged offense." *United States v. Harrow*, 65 M.J. 190, 205 (C.A.A.F. 2007). The record of trial must show the military judge "questioned the accused about what he did or did not do, and what he intended (where this is pertinent), to make clear the basis for a determination by the military trial judge or president whether the acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty." *United States v. Care*, 40 C.M.R. 247, 253 (C.M.A. 1969).

"If an accused sets up matter inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014) (internal quotation marks and citation omitted). Appellate courts will not speculate on the existence of facts that might invalidate a plea, especially where the matter raised post-trial contradicts an appellant's express admission on the record. *See United States v. Johnson*, 42 M.J. 443, 445 (C.A.A.F. 1995).

A military judge "has a duty to accurately inform an appellant of the nature of his offense and an essential aspect of informing is a correct definition of legal concepts." *United States v. Murphy*, 74 M.J. 302, 308 (C.A.A.F. 2015) (internal quotation marks, alterations, and citations omitted). However, "failure to define correctly a legal concept or explain each and every element of the charged offense to the accused in a clear and precise manner is not reversible error if it is clear from the entire record that the accused knew the elements, admitted them freely, and pleaded guilty because he was guilty." *Id.* (internal quotation marks and citations omitted).

"Once the military judge has accepted a plea as provident and has entered findings based on it, an appellate court will not reverse that finding and reject the plea unless it finds a substantial conflict between the plea and the accused's statements or other evidence of record." *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996). "Even if a guilty plea is later determined to be improvident, a reviewing court may grant relief only if it finds that the military judge's error in accepting the plea 'materially prejudice[d] the substantial rights of the accused.'" *United States v. Mortadella*, 82 M.J. 1, 4 (C.A.A.F. 2021) (alteration in original) (quoting Article 45(c), UCMJ, 10 U.S.C. § 845(c)). In reviewing the providence of an appellant's guilty pleas, "we consider his colloquy with the military judge, as well as any inferences that may reasonably be drawn from it." *United States v. Timsuren*, 72 M.J. 823, 828 (A.F. Ct. Crim. App. 2013) (quoting *United States v. Carr*, 65 M.J. 39, 41 (C.A.A.F. 2007) (citation omitted)).

"[W]hen a plea of guilty is attacked for the first time on appeal, the facts will be viewed in the light most favorable to the [G]overnment." *United States v. Arnold*, 40 M.J. 744, 745 (A.F.C.M.R. 1994) (citation omitted).

#### b. Statutory Construction

We review interpretation of a statute de novo. *United States v. Kohlbek,* 78 M.J. 326, 330–31 (C.A.A.F. 2019) (citation omitted). "In conducting this de novo review, this Court employs principles of statutory construction." *United States v. Beauge*, 82 M.J. 157, 162 (C.A.A.F. 2022) (citing *Kohlbek*, 78 M.J. at 330). "As in all statutory construction cases, we begin with the language of the statute." *United States v. McDonald*, 78 M.J. 376, 379 (C.A.A.F. 2019) (quoting *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 450 (2002)). In the absence of a statutory definition, the plain language of a statute will control unless it is ambiguous or leads to an absurd result. *United States v. Lewis*, 65 M.J. 85, 88 (C.A.A.F. 2007) (citations omitted). "[W]hether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case" is the starting point for determining the meaning of the statute. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). Such "inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Id.* "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341 (first citing *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 477 (1992); then citing *McCarthy v. Bronson*, 500 U.S. 136, 139 (1991)). When we see a "facial ambiguity . . . , we must interpret it in light of the broader context of the rule." *Beauge,* 82 M.J. at 162 (citation omitted).

Finally, "when a word has an easily graspable definition outside of a legal context, authoritative lay dictionaries may also be consulted." *United States v.*

*Schmidt*, 82 M.J. 68, 75–76 (C.A.A.F. 2022) (Ohlson, C.J., concurring in the judgment) (footnote and citation omitted), *cert. denied*, *Schmidt v. United States*, 143 S. Ct. 214 (2022); *see also Wooden v. United States*, __ U.S. __, 142 S. Ct. 1063 (2022) (utilizing only lay dictionaries to define the word "occasion").

### c. Stare Decisis

The doctrine of *stare decisis* ordinarily obliges us to adhere to our own precedent in interpreting successive cases on the same subject matter. "The doctrine of stare decisis is 'the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *United States v. Rorie*, 58 M.J. 399, 406 (C.A.A.F. 2003) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)). "The doctrine is 'most compelling' where courts undertake statutory construction." *Id.* (first citing *Hilton v. South Carolina Public Ry. Comm'n*, 502 U.S. 197, 205 (1991); and then citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 172 (1989)). However, this doctrine "is not an inexorable command; rather, it is a principle of policy and not a mechanical formula of adherence to the latest decision." *United States v. Falcon*, 65 M.J. 386, 390 (C.A.A.F. 2008) (internal quotation marks and citation omitted). Instead, *stare decisis* is a principle of decision making, not a rule, and need not be applied when the precedent at issue is "unworkable or poorly reasoned." *United States v. Quick*, 74 M.J. 332, 336 (C.A.A.F. 2015) (footnote omitted).

 "[A]dhering to precedent 'is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right.'" *United States v. Tualla*, 52 M.J. 228, 231 (C.A.A.F. 2000) (quoting *Payne,* 501 U.S. at 827). In evaluating the application of *stare decisis*, we consider the following factors: "whether the prior decision is unworkable or poorly reasoned; any intervening events; the reasonable expectations of servicemembers; and the risk of undermining public confidence in the law." *United States v. Blanks*, 77 M.J. 239, 242 (C.A.A.F. 2018) (quoting *Quick*, 74 M.J. at 336).

### d. Sexual Abuse of a Child

The applicable language in Article 120b, UCMJ, for sexual abuse of a child is substantially the same in the 2012, 2016, and 2019 versions of the *Manual for Courts-Martial* (*MCM*).[10] A person "who commits a lewd act upon a child is guilty of sexual abuse of a child." Article 120b(c), UCMJ. A lewd act includes, *inter alia,*

---

[10] Specification 5 of Charge I alleges conduct occurring between 2014 and 2019.

> any indecent conduct, intentionally done with or in the presence of a child, including via any communication technology, that amounts to a form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations.

Article 120b(h)(5)(D), UCMJ, 10 U.S.C. § 920b(h)(5)(D).

For Appellant to be found guilty of child sexual abuse by indecent conduct in violation of Article 120b(c), UCMJ, as alleged in Specification 5 of Charge I, the Government was required to prove beyond a reasonable doubt that Appellant: (1) "engaged in indecent conduct, intentionally done with or *in the presence of a child,*" and (2) his "indecent conduct amounted to a form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations." *See, e.g.*, *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*), pt. IV, ¶45b.b.(4)(e) (emphasis added).

The Analysis of the Punitive Articles states:

> The new "Sexual Abuse of a Child" offense under Article 120b.(c), which proscribes committing a "lewd act" upon a child, was intended to consolidate the 2007 version of Article 120(f), Article 120(g), Article 120(i), and Article 120(j), by expanding the definition of "lewd act" to include any sexual contact with a child, indecent exposure to a child, communicating indecent language to a child, and committing indecent conduct with or in the presence of a child. Exposure, communication, and indecent conduct now include offenses committed via any communication technology to encompass offenses committed via the [I]nternet (such as exposing oneself to a child by using a webcam), cell phones, and other modern forms of communication. This change expands the pre-2012 definition of "indecent liberty" which proscribed conduct only if committed in the physical presence of a child.

2016 *MCM*, App. 23, at A23-16.

"In the presence" is not a defined statutory term for Article 120b(c), UCMJ, 10 U.S.C. § 920b(c). The Military Judge's Benchbook providing instructions for the indecent act did not provide a definition for "in the presence." *See Military Judges' Benchbook*, Dept. of the Army Pamphlet 27-9 (29 Feb. 2020) at 643–48 (pre-2019 Article 120b, UCMJ) (*Benchbook*); *Benchbook*, at 1416–21 (post-2019 Article 120b, UCMJ).

### 3. Analysis

Appellant argues the element of the offense charged in this case—sexual abuse of a child—which requires that an accused engage in indecent conduct "in the presence of a child," requires the child be aware of the indecent conduct. We conclude it does not.

The case before this court calls upon us to consider whether we ought to overrule *Burkhart*, a prior precedent of this court which expressly held that to be convicted of the predecessor offense of "indecent liberties with a child"[11]— now the current Article 120b(c), UCMJ, *Sexual Abuse of a Child* via lewd acts— the child must be in "close proximity" to the appellant "coupled with" some "awareness" of his "presence and actions." 72 M.J. at 594–95. In *Burkhart*, the court further opined that the child's senses needed to be "conjoined" with those of the appellant. *Id.* at 595.

We begin with statutory construction. First, we apply the plain meaning of the phrase "in the presence of a child" which is clear and unambiguous. *See Robinson*, 519 U.S. at 340. "Presence" under this statute, by its plain meaning, simply requires the offender to be in proximity to the child.[12] There is no "awareness" element in the plain meaning of the word "presence." Additionally, we see nothing in the statutory language or context that requires the victim's awareness of the offender's indecent conduct. *See id.* at 341.

Our interpretation of the term "in the presence of a child," which does not require the child's awareness of the conduct, is consistent with Chief Judge Ohlson's concurrence in *Schmidt, supra*; our sister service court's decision in *United States v. Tabor*, 82 M.J. 637 (N.M. Ct. Crim. App. 2022) (en banc), *rev. denied,* 82 M.J. 64 (C.A.A.F. 2022); and recent efforts by Congress more generally to expand the scope of indecent conduct subject to criminal sanctions.[13] However, before addressing these cases, the relevant congressional changes,

---

[11] The appellant in *Burkhart* was convicted of indecent liberty with a child, in violation of Article 120, UCMJ (*Manual for Courts-Martial, United States* (2008 ed.) (2008 *MCM*)). 72 M.J. at 591.

[12] Recognized lay dictionary definitions of "presence" include: "the state of being with or in the same place as a person or thing; attendance, company, society" and "the part of space within one's immediate vicinity." *See* OXFORD ENGLISH DICTIONARY, *Presence*, https://www.oed.com/search/dictionary/?scope=Entries&q=presence (last visited 12 Sep. 2023); MERRIAM-WEBSTER, *Presence*, https://www.merriam-webster.com/dictionary/presence (last visited 12 Sep. 2023).

[13] *See, e.g.*, 2016 *MCM*, App. 23, at A23-16 (explaining the intent of the 2012 amendments to Article 120b, UCMJ, to include the intent to "consolidate" the previous statutes and "expand" the definition of "lewd acts" pertaining to children); *see also* the National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 5430 (23 Dec. 2016) (Military Justice Act 2016) (broadening the definition of sexual act to conform with federal law under 18 U.S.C. §§ 2246(2)(A)–(C)).

and why we are compelled to overrule *Burkhart*, we must address *United States v. Miller*, 67 M.J. 87 (C.A.A.F. 2008), and *Burkhart*'s application of *Miller*.

The issue in *Miller* involved an offense—indecent liberties with a child—that no longer is enumerated under Article 134, UCMJ. *See Manual for Courts-Martial*, *United States* (2005 ed.). The United States Court of Appeals for the Armed Forces (CAAF) in *Miller* considered whether an appellant's criminal conduct—which took place remotely by use of a web camera—could satisfy an element of that former offense of taking indecent liberties with a child; specifically, that part of the offense which required the accused to commit the criminal conduct "in the presence of" a child. *Id.* at 89. The CAAF held the element required evidence that the accused's conduct occurred "in the physical presence of the child" and "same physical space" as the child, and therefore concluded the offense could not be committed remotely by use of a web camera. *Id.* at 90–91.

The nature of the "awareness" was not at issue in *Miller*. In defining "physical presence," the CAAF stated in two parts the definition of "presence:" (1) "[t]he state or fact of being in a particular place and time," and (2) "[c]lose physical proximity coupled with awareness." *Id.* at 90 (alterations in original) (internal quotation marks omitted) (quoting *Presence*, BLACK'S LAW DICTIONARY (8th ed. 2004)). The CAAF did not specify whose awareness was required, and did not address the second definition from *Black's Law Dictionary* that included "awareness" elsewhere in the opinion. The CAAF's citation to the *Black's Law Dictionary* definition of "presence" which included "awareness" did not create a requirement for "awareness" on the part of the child to satisfy the element including "in the presence of."

In *Burkhart*, five years after *Miller*, our court considered a different but related statute, *Indecent liberties with a child*, under Article 120, UCMJ.[14] 72 M.J. at 590. Our court found that physical presence for that offense required both close physical proximity and *awareness by the victim*. *See Burkhart*, 72 M.J. at 595. As the *Burkhart* court created a requirement for awareness, it specifically cited the second definition for "presence" that *Miller* cited but itself did not apply. The statute at issue in *Burkhart*, namely Article 120(j), UCMJ (2008 *MCM*), is different from the statute at issue in Appellant's case, namely Article 120b(h)(5)(D), UCMJ (2012, 2016 and 2019 *MCMs)*; however, the statutory language at issue—in the "presence of a child"—is the same in both

---

[14] All references in this opinion to Article 120, UCMJ, are to the 2008 *MCM*.

statutes. To the extent *Burkhart* is binding precedent on this issue, it is over-ruled.[15]

We find that *Burkhart* was "poorly reasoned." It substantially relied upon *dicta* in *Miller* to reach the conclusion that a victim's awareness of the presence of the accused was a constituent part of the "physical presence" required for "indecent liberties" with a child. It departed from the "plain meaning" canon of statutory construction and unnecessarily used a legal dictionary to define a lay term. *See Schmidt,* 82 M.J. at 75–76 (Ohlson, C.J., concurring in the judgment). We are mindful of CAAF's well-reasoned admonition that adherence to precedent is *ordinarily* "the preferred course because it promotes the even-handed, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *United States v. Cardenas*, 80 M.J. 420, 423 (C.A.A.F. 2021) (internal quotation marks and citations omitted). However, demonstrably *wrong* judicial decisions do not contribute to the integrity of the judicial process.[16] Moreover, the absence from the *Benchbook* of this *Burkhart* requirement is some indication trial courts did not follow it. Our court erred in *Burkhart* in holding that a victim's awareness was a component of "physical presence" for what was then Article 120(j), UCMJ, *Indecent liberties with a child*. That error should not be extended to what is contained in Article 120b(c), UCMJ, *Sexual Abuse of a Child* via lewd acts (2016 *MCM*, 2019 *MCM*). To correct that error, we expressly overrule *Burkhart* and conclude that "in the presence" for purposes of the current Article 120b(c), UCMJ, offense *does not* require an "awareness" of the child victim of the accused's lewd acts.

---

[15] We note that neither party has argued that our court's holding in *Burkhart* is controlling.

[16] While the fact that a case was wrongly decided, standing alone, is not usually a basis for overturning a precedent, our superior court has not hesitated to determine a precedent as wrongly decided based *solely* upon it being an erroneous statement of law. *See e.g. United States v. Piolunek,* 74 M.J. 107, 108–09 (C.A.A.F. 2015) (determining *United States v. Barberi*, 71 M.J. 127 (C.A.A.F. 2012), was wrongly decided based solely upon legal error and without any reference to other usual *stare decisis* factors); *United States v. Jones*, 68 M.J. 465, 472 (C.A.A.F. 2010) (overruling *United States v. Hudson*, 59 M.J. 357, 359 (C.A.A.F. 2004) and re-establishing the "elements test" for determining lesser included offenses); *United States v. Miller*, 67 M.J. 385, 388–89 (C.A.A.F. 2009) (overruling in part *United States v. Foster* 40 M.J. 140, 143 (C.M.A. 1994) and 50 years of associated precedent in holding that the Article 134, UCMJ, terminal element of "conduct prejudicial to good order and discipline" is not included by implication in all enumerated punitive articles).

Our conclusion is not novel.[17] While no majority of the court formed to provide an answer as to whether "in the presence of" requires the child's "awareness" of an accused committing a lewd act as proscribed by Article 120b(c), UCMJ, we are persuaded by the concurring opinion by Chief Judge Ohlson joined by Senior Judge Erdmann, which states:

> [I]t is clear to me that Congress did not intend the meaning of the phrase "in the presence of" in Article 120b(h)(5)(D)[, UCMJ,] to include any element of "awareness." For purposes of this article, the phrase simply means that one person is in the immediate vicinity of another person. Because "the language at issue has a plain and unambiguous meaning" and "the statutory scheme is coherent and consistent," our role of judicial interpretation is at an end.

*Id.* at 78. (Ohlson, C.J., concurring in the judgment) (quoting *Robinson*, 519 U.S. at 340).[18] Chief Judge Ohlson further addressed the issue of awareness, stating, "In my view, the plain language of the statute only requires an accused who is intentionally engaging in a lewd act to be aware of the child's *presence*; it does *not* require the child victim to be *aware* of the accused's lewd act." *Id.* at 74. (Ohlson, C.J., concurring in the judgment).

Moreover, we find the recent decision from our sister court in *Tabor*—only three months after *Schmidt* was decided—also persuasive support for our conclusion that proof of a child's awareness of indecent conduct is not required for a conviction under Article 120b(c), UCMJ. 82 M.J. at 655. In *Tabor*, the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) also focused on statutory construction and concluded "[t]here is no requirement, either explicitly or implicitly in the statute, that the child victim be aware of the accused's lewd act." *Id.* at 653. We agree with NMCCA that the plain meaning of "any indecent conduct, intentionally done with or in the presence of a child" contained in Article 120b(h)(5)(D), UCMJ, does not require the child to be "aware" of the accused's conduct. *Id.*

Accordingly, the military judge in this case did not abuse his discretion by not defining "intentionally done in her presence" to include "awareness" of the lewd act by Appellant's daughter where that term had no statutory definition

---

[17] In *Schmidt*, the CAAF acknowledged the definition of "in the presence of" required under Article 120b(h)(5)(D), UCMJ, was "an issue of first impression." 82 M.J. at 73 (Sparks, J., announcing the judgment of the Court).

[18] Only one judge found awareness was required. *Schmidt*, 82 M.J. at 74 (Sparks, J., announcing the judgment of the Court). Two other judges joined a concurring opinion finding the issue was waived. *Id.* at 78–79 (Maggs, J., concurring in the judgment).

and therefore the common and ordinary meaning of "physical presence" applied. We also find no "substantial conflict between the plea and the accused's statements or other evidence of record." *Garcia*, 44 M.J. at 498. Appellant's plea to Specification 5 of Charge I is provident as the military judge elicited facts to support each element of sexual abuse of a child. *Harrow*, 65 M.J. at 205.

**B. Legal and Factual Sufficiency**

Appellant challenges the legal and factual sufficiency of his conviction regarding the words to which he pleaded not guilty in Specification 5. Appellant argues it is unclear whether the military judge applied the correct legal standard for "presence," and Appellant's daughter's "testimony does not reference particular time periods of when Appellant allegedly masturbated or make clear when and where these incidences actually occurred." We resolve these issues adverse to Appellant and conclude the conviction is legally and factually sufficient.

### 1. Additional Background

Appellant's daughter testified Appellant began abusing her when she was 7 or 8 years old while she resided in Texas. At that time, Appellant was stationed at Dyess AFB, Texas. In her testimony, Appellant's daughter was not specific as to the dates when Appellant masturbated in her presence. However, she testified Appellant masturbated in her presence both in Germany and Texas. During cross-examination, Appellant's daughter testified:

Q. Did he ever get under the sheets with you?

A. While humping me, no.

Q. Other times?

A. Yes. Sometimes if we were sitting next to each other on the bed or on the couch, he would put a blanket over us and he would start -- he wouldn't touch me, but he would start masturbating next to me when we were watching or sitting next to each other.

Q. Where do you remember that happening?

A. In Texas.

Q. So in Texas sometimes he would masturbate while he was under the covers with you, even though he wasn't touching your body?

A. Yeah. He did this in Germany too.

### 2. Law

17

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). "Our assessment of legal and factual sufficiency is limited to the evidence produced at trial." *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citing *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993)), *rev. denied*, 82 M.J. 312 (C.A.A.F. 2022).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). The evidence supporting a conviction can be direct or circumstantial. *See United States v. Long*, 81 M.J. 362, 368 (C.A.A.F. 2021) (citing R.C.M. 918(c) (additional citation omitted)). "[A] rational factfinder[ ] [may] use [its] 'experience with people and events in weighing the probabilities' to infer beyond a reasonable doubt" that an element was proven. *Id.* at 369 (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)). "The standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration and citation omitted). The test for legal sufficiency "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1973)).

"The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are ourselves convinced of the appellant's guilt beyond a reasonable doubt." *Rodela*, 82 M.J. at 525 (alterations, internal quotation marks, and citation omitted). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018) (alteration in original) (quoting *Washington*, 57 M.J. at 399). "The term reasonable doubt . . . does not mean that the evidence must be free from conflict." *Id.* (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)).

For Appellant to be found guilty of sexual abuse of a child by indecent conduct, the Government was required to prove beyond a reasonable doubt: (1)

"That the accused engaged in indecent conduct, intentionally done with or in the presence of a child;" and (2) "That the indecent conduct amounted to a form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations." 2016 *MCM*, pt. IV, ¶ 45b.b.(4)(e).

### 3. Analysis

One of Appellant's claims is that his conviction for the excepted words of sexual abuse of a child is not legally or factually sufficient because it is unclear whether the military judge applied the correct legal standard for "in the presence of a child." As we resolved above, "in the presence of a child" language does not require awareness as Appellant asserts. Consequently, there is no basis to conclude the military judge applied an incorrect legal standard. We now turn to Appellant's other claims and related issue for which we heard oral argument.

Appellant argues his daughter's testimony: (1) is not specific as to when and where the incidences she described occurred; (2) contains several inconsistencies; (3) lacks sufficient detail; and (4) conflates masturbation with other instances of charged and uncharged conduct. We have thoroughly considered the points raised by Appellant. From our review of the record, however, we are convinced the evidence is both legally and factually sufficient. We find there was ample evidence for the military judge to determine Appellant masturbated in the presence of his daughter "at or near Dyess [AFB], Texas," during the charged timeframe. Although her testimony was at times general in nature as to when and where acts occurred, Appellant's daughter was specific in describing that "[i]n Texas," Appellant "would start masturbating next to [her] when [they] were watching [television] or sitting next to each other." She also agreed during questioning that Appellant would masturbate under the covers, but he was not touching her.

As an evidentiary standard, proof beyond a reasonable doubt does not require more than one witness to testify credibly. *See United States v. Rodriguez-Rivera,* 63 M.J. 372, 383 (C.A.A.F. 2006). We are not persuaded that any inconsistencies in Appellant's daughter's testimony are more than minor or equate to reasonable doubt, and we are convinced of the legal and factual sufficiency of the conviction. Consequently, we disagree with Appellant's assertions.

When viewing the evidence offered at trial in the light most favorable to the Government, a rational factfinder could readily find the essential elements of the charged sexual abuse of a child beyond a reasonable doubt. We therefore conclude the evidence is legally sufficient to support Appellant's conviction. Giving the appropriate deference to the trial court's ability to see and hear the

witnesses, and after our own independent review of the record, we ourselves are convinced of Appellant's guilt beyond a reasonable doubt. Accordingly, we also find the evidence factually sufficient.

## C. Sentence Severity

Appellant claims his sentence is inappropriately severe when compared to "similar unrelated cases as outlined" in Appellant's brief. We disagree with Appellant's assertions that his sentence is inappropriately severe and find no relief is warranted.

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2016) (footnote omitted). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we] find correct in law and fact and determine[ ], on the basis of the entire record, should be approved." Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). The CAAF instructs that:

> Article 66(d)(1), UCMJ, provides the "[Courts of Criminal Appeals (CCAs)] "broad discretion to determine whether a sentence 'should be approved,' a power that has no direct parallel in the federal civilian sector." "The [CCAs'] power to review a case for sentence appropriateness . . . includes but is not limited to considerations of uniformity and even-handedness of sentencing decisions."

*United States v. Behunin*, 83 M.J. 158, 161 (C.A.A.F. 2023) (second alteration and omission in original) (quoting *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001)).

When considering uniformity with regard to an appellant's sentence, we are "not required . . . to engage in sentence comparison with specific [other] cases 'except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)) (additional citation omitted). Under *Lacy*,

> [a]t a Court of Criminal Appeals, an appellant bears the burden of demonstrating that any cited cases are "closely related" to his or her case and that the sentences are "highly disparate." If the appellant meets that burden, or if the court raises the issue on its own motion, then the Government must show that there is a rational basis for the disparity.

*Id.* at 288. Notwithstanding a failure to demonstrate cases are closely related, we may consider "unrelated cases" as "CCAs typically have 'discretion to

consider and compare other [specific] courts-martial sentences when [they are] reviewing a case for sentence appropriateness and relative uniformity.'" *Behunin*, 83 M.J. at 161 (alterations in original) (quoting *United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001)).

We "assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). While we have discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

For the offenses of which Appellant was found guilty, the maximum sentence available included 105 years of confinement.[19] Appellant contends his sentence of a dishonorable discharge, confinement for 30 years, and reduction to the grade of E-1 is inappropriately severe when compared to "similar unrelated cases." Appellant does not claim, nor do we find, Appellant's case is "closely related" to any other case. *Lacy*, 50 M.J. at 288. Appellant's argument focuses on a claim that his "significant confinement sentence" is inappropriate when compared to other cases. We disagree.

Appellant not only repeatedly sexually abused his biological daughter over a period of years, on two continents, he also indecently recorded her, viewed and possessed child pornography, and obstructed justice. On multiple occasions, Appellant touched his daughter's breasts, thighs, and buttocks; touched her genitalia and buttocks with his penis through the clothing; touched her genitalia directly; and rubbed his penis with his hand in her presence. Also, in both Germany and Texas, once or twice a month for a year, Appellant made indecent recordings of his daughter's breasts, vagina, genitalia, and buttocks. Appellant would record his daughter's private areas while she was asleep, and even move her leg with his hand to facilitate his recording. Appellant also recorded himself with his penis in his hand and placed it on his daughter's buttocks and genitalia over her underwear.

At the court-martial, Appellant's daughter provided a victim impact statement to the court in which she explained that she had "extremely detailed and haunting nightmares that feature[d her] dad" in which she relived what Appellant had done to her. Appellant's daughter further explained that she had "gotten to the point that [she was] scared to sleep every night without [her] mother l[a]ying beside [her] or, at least, in the same room." She described that

---

[19] At trial, the military judge granted a defense motion for unreasonable multiplication of charges and merged the child pornography specifications for sentencing.

the "trauma of [her] father molesting [her] over so many years has impacted [her] day-to-day life in ways [she] never imagined." Appellant's daughter expressed she had difficulty completing simple tasks, feared males, experienced anxiety, and had difficulty in school, both academically and socially.

During the sentencing phase, Appellant's case consisted only of a written and verbal unsworn statement. Appellant described that he was from a small village in Guam and that his "elementary years were rough." Appellant explained that one of his teachers "got strangely close" to him and that he "didn't know that [his] first sexual experience wasn't normal." Appellant highlighted his military record, apologized for his misconduct, and expressed remorse.

We have considered Appellant's case for sentence appropriateness and relative uniformity. After our careful consideration of the matters contained in the "entire record," the nature and seriousness of Appellant's offenses, and his record of service, we find the sentence is not inappropriately severe.

## D. Timeliness of Appellate Review

Additionally, we consider whether Appellant is entitled to relief for a facially unreasonable appellate delay. *Moreno*, 63 M.J. at 135 (citations omitted); *Tardif*, 57 M.J. at 223–24. We decline to grant such relief.

### 1. Law

We review de novo whether an appellant has been denied the due process right to speedy appellate review. *Moreno*, 63 M.J. at 135 (citations omitted). A presumption of unreasonable delay arises when appellate review is not completed, and a decision rendered within 18 months of a case being docketed. *Id.* at 142. A presumptively unreasonable delay triggers an analysis of the four factors specified in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citations omitted). A presumptively unreasonable delay satisfies the first factor, but the Government "can rebut the presumption by showing the delay was not unreasonable." *Id.* at 142. Assessing the fourth factor of prejudice, we consider the interests of "prevention of oppressive incarceration pending appeal;" "minimization of anxiety and concern of those convicted awaiting the outcome of their appeals;" and "limitation of the possibility that . . . grounds for appeal, and . . . defenses in case of reversal and retrial, might be impaired." *Id.* at 138–39 (citations omitted). In the absence of prejudice as identified in *Moreno*, a due process violation exists only when "the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Furthermore, we are required by Article 66(d), UCMJ, to determine which findings of guilty and the sentence or part thereof "should be approved." 10 U.S.C. § 866(d); *see also Tardif*, 57 M.J. at 224. In *Tardif*, the CAAF recognized "a [CCA] has authority under Article 66[ ][, UCMJ,] to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a)." 57 M.J. at 224 (citation omitted). The essential inquiry under *Tardif* is whether, given the post-trial delay, the sentence "remains appropriate[ ] in light of all circumstances." *Toohey*, 63 M.J. at 362 (citing *Tardif*, 57 M.J. at 224).

### 2. Analysis

Appellant's case was docketed with the court on 18 October 2021. The delay in rendering this decision after 18 April 2023 is presumptively unreasonable. The reasons for the delay include the time required for Appellant to file his brief on 13 September 2022, the Government to file its answer on 24 October 2022, and Appellant to file his reply on 7 November 2022. Additionally, on 22 December 2022, we issued an order for oral argument which was held on 22 March 2023. Appellant is confined for a term of 30 years and asserted his right to timely appellate review on 19 May 2023. However, Appellant has made no specific claim of prejudice, and we find none. Because we find no particularized prejudice, and the delay is not so egregious as to adversely affect the public's perception of the fairness and integrity of the military justice system, there is no due process violation. *See Toohey*, 63 M.J. at 362.

We also conclude there is no basis for relief under Article 66(d)(2), UCMJ, or *Tardif* in the absence of a due process violation. *See United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). Considering all the facts and circumstances of Appellant's case, we decline to exercise our Article 66(d), UCMJ, authority to grant relief for the delay in completing appellate review.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.


JOHNSON, Chief Judge (dissenting), joined by Judge GRUEN:

Because I am not persuaded we should overrule this court's published opinion in *United States v. Burkhart*, 72 M.J. 590 (A.F. Ct. Crim. App. 2013), I respectfully dissent.

As the majority opinion recognizes, "[t]he doctrine of stare decisis is 'the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *United States v. Rorie*, 58 M.J. 399, 406 (C.A.A.F. 2003) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)). "The doctrine is 'most compelling' where courts undertake statutory construction." *Id.* (citing *Hilton v. South Carolina Public Ry. Comm'n*, 502 U.S. 197, 205 (1991); *Patterson v. McLean Credit Union*, 491 U.S. 164, 172 (1989)); *see also United States v. Quick*, 74 M.J. 332, 335 (C.A.A.F. 2015) (quoting *Rorie*).

> *Stare decisis* is a principle of decision making, not a rule, and need not be applied when the precedent at issue is "unworkable or . . . badly reasoned." As a general matter, however, "adhering to precedent 'is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right.'"

*United States v. Tualla*, 52 M.J. 228, 231 (C.A.A.F. 2000) (omission in the original) (quoting *Payne*, 501 U.S. at 827) (additional citation omitted). "Respecting *stare decisis* means sticking to some wrong decisions. . . . Indeed, *stare decisis* has consequence only to the extent it sustains incorrect decisions; correct judgments have no need for that principle to prop them up." *Kimble v. Marvel Entm't, LLC*, 576 U.S. 446, 455 (2015). "A party must present a 'special justification' for us to overrule prior precedent." *United States v. Blanks*, 77 M.J. 239, 242 (C.A.A.F. 2018) (quoting *Kimble*, 576 U.S. at 455–56).

In *Burkhart*, this court held that "in order to sustain a charge of indecent liberty [with a child] under Article 120(j), [Uniform Code of Military Justice (UCMJ)],[1] the child must have at least some awareness the accused is in her physical presence." 72 M.J. at 593. This court arrived at that conclusion after reviewing "the intent behind the criminalization of this conduct, the statutory definition of the offense, and the case law interpreting the requirement of 'presence' for the offense of indecent liberty." *Id.* The opinion reviewed the development of our superior court's precedent regarding the offense of indecent liberties with a child through *United States v. Brown*, 13 C.M.R. 10 (C.M.A. 1953), and *United States v. Knowles*, 35 C.M.R. 376 (C.M.A. 1965), and the then-applicable definition of "indecent liberty" under Article 120(t)(11), UCMJ, 10 U.S.C. § 920(t)(11), to reach the conclusion that "the child must be aware the

[1] References to Article 120, UCMJ, 10 U.S.C. § 920, are to the *Manual for Courts-Martial, United States* (2008 ed.). Unless otherwise noted, references to Articles 120b and 134, UCMJ, 10 U.S.C. §§ 920b, 934, are to the *Manual for Courts-Martial, United States* (2016 ed.).

conduct is occurring." *Burkhart*, 72 M.J. at 593–94 (citations omitted). Then the court noted that several decisions of the United States Court of Appeals for the Armed Forces (CAAF), notably including *United States v. Miller*, 67 M.J. 87, 90 (C.A.A.F. 2008), included language that "also indicated the child must be aware of the accused's conduct." *Burkhart*, 72 M.J. at 594. Two of our sister courts subsequently agreed with *Burkhart* and held that the offense of indecent liberties with a child required the child be aware of the accused's conduct. *See United States v. Gould*, ARMY 20120727, 2014 CCA LEXIS 694, at *2 (A. Ct. Crim. App. 16 Sep. 2014) (unpub. op.), *rev'd in part on other grounds*, 75 M.J. 22 (C.A.A.F. 2015) (mem.); *United States v. Anderson*, NMCCA 201200499, 2013 CCA LEXIS 517, at *16 (N.M. Ct. Crim. App. 27 Jun. 2013) (unpub. op.); *but see United States v. Tabor*, 82 M.J. 637 (N.M. Ct. Crim. App. 2022) (en banc), *rev. denied*, 82 M.J. 64 (C.A.A.F. 2022) (holding that a "lewd act" defined by Article 120b, UCMJ, does not require the child be aware of the indecent act).

I am not persuaded the holding of *Burkhart* has proven to be unworkable or has been demonstrated to have been badly reasoned. There has been no showing the requirement the child be aware of the accused at the time of the indecent conduct is "unworkable;" whether the holding of *Burkhart* has been adequately communicated to Air Force practitioners is a distinct question.

The majority finds *Burkart* was "poorly reasoned" because it "substantially relied" on the definition of "presence" the CAAF used in *Miller*, because that language was *dicta* and "departed from the 'plain meaning' canon of statutory construction and unnecessarily used a legal dictionary to define a lay term." *United States v. Cabahut*, __ M.J. __, No. ACM 40191, slip. op. at *15 (A.F. Ct. Crim. App. 13 Sep. 2023) (en banc). I do not agree with the majority's characterization of *Burkhart's* purported reliance on *Miller*. I do agree with my colleagues in the majority that *Miller* itself does not require "awareness" as part of "presence." However, I do not read *Burkhart* to indicate the court was mistaken on this point. As described above, this court's opinion in *Burkhart* did not purport to simply follow *Miller*, or even to find *Miller* controlling. Rather, it found language in *Miller* and other CAAF opinions "also" supported the conclusion the court had reached based on its review of older precedent and language in the statute. *Burkhart*, 72 M.J. at 593–94. Moreover, after citing the definition of "presence" from *Miller*, *Burkhart* correctly states the actual holding of *Miller*—that "an individual who masturbates while a child watches over a web camera [wa]s not in the 'physical presence' of that child and cannot be convicted of indecent liberties," based on the applicable version of Article 120, UCMJ. *Id.* at 595 (citing *Miller*, 67 M.J. at 90–91) (additional citations omitted).

In addition, just because a statement in an opinion is dicta does not make it wrong or irrelevant. The fact that our superior court had chosen in *Miller* to

employ a definition of "presence" that included "awareness" for purposes of an indecent liberty in the "presence" of a child was surely a reasonable observation for this court to make. I do not see how this is bad reasoning.

As to the "plain meaning canon of statutory instruction," the divided CAAF opinion in *United States v. Schmidt*, 82 M.J. 68 (C.A.A.F. 2022), and the prior history of the Courts of Criminal Appeals finding an "awareness" requirement, are some indication that the definition of "presence" in the context of sexual abuse of a child is not "plain." Unlike my colleagues in the majority, I do not find the phrase "in the presence of a child" as used in Article 120b, UCMJ, to be clear and unambiguous. I find something strange in the majority's criticism of the use of *Black's Law Dictionary* to interpret the meaning of "presence" when that is exactly what our superior court did in *Miller*. More to the point, after considering various sources—including *inter alia Burkhart* itself; *Miller*; *Brown*; *Knowles*; Judge Sparks' lead opinion and Chief Judge Ohlson's concurring opinion in *Schmidt*; the majority, concurring, and dissenting opinions in *Tabor*; statutory changes to the UCMJ over time; and the parties' briefs and arguments in the instant case—I am not thoroughly convinced *Burkhart* interpreted Congress's intent incorrectly. For purposes of this separate opinion, it is not useful to catalog all the arguments marshalled by these various sources on both sides of the question and to set forth my thoughts on them. It is enough to say I am not persuaded we should overrule *Burkhart* in this case under the principles of *stare decisis*, which enjoin us to tolerate even incorrect precedent absent a "special justification," particularly in matters of statutory interpretation. *Blanks*, 77 M.J. at 242 (citation omitted).

Having said that, I appreciate the effect of the majority's opinion and have no hesitation applying our court's new precedent—also recognizing the CAAF or Congress could bring greater clarity to this area.

Returning to the instant case, when Appellant pleaded guilty to Specification 5 of Charge I with respect to rubbing his penis in the presence of his daughter at or near Ramstein Air Base, Germany, Appellant described going into his daughter's bedroom when he thought she was sleeping. He did not admit his daughter was awake on any of these occasions in her bedroom. The military judge prompted Appellant to agree that although his daughter was asleep, on "those occasions where she was asleep it was in her presence."

I believe the military judge's explanation of the law on this point was contrary to *Burkhart*. The offense of indecent liberty with a child under Article 120, UCMJ, this court interpreted in *Burkhart* is substantially the same offense as sexual abuse of a child in violation of Article 120b, UCMJ, alleged in Specification 5 of Charge I in the instant case. As explained in *Burkhart*, "a military member would be guilty of the offense of indecent liberty if he 'engage[d] in indecent liberty in the physical presence of a child [ ] with the intent

to arouse, appeal to, or gratify the sexual desire of any person; or [ ] with the intent to abuse, humiliate, or degrade any person.'" 72 M.J. at 593 (omissions in the original) (quoting Article 120(j), UCMJ). Article 120(t)(11), UCMJ, defined "indecent liberty" to "mean[ ] indecent conduct, but physical contact is not required." "Indecent conduct," in turn, "mean[t] that form of immorality relating to sexual impurity that is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite the sexual desire or deprave the morals with respect to sexual relations." Article 120(t)(12), UCMJ.

"The current version of this offense [indecent liberty] is now codified as sexual abuse of a child by indecent conduct" under Article 120b, UCMJ. *Schmidt*, 82 M.J. at 73 (Sparks, J., announcing the judgment of the Court). "As of 28 June 2012, Article 120b[, UCMJ,] criminalizes sexual offenses against children under the age of 16 which were previously contained in the 2007 version of Article 120[, UCMJ]." *Manual for Courts-Martial, United States* (2016 ed.), App. 23, ¶ 45b. The version of sexual abuse of a child under Article 120b(c), UCMJ, applicable to Specification 5 of Charge I provides a servicemember "who commits a lewd act upon a child is guilty of sexual abuse of a child." "Lewd act," in turn, is defined to include, in pertinent part:

> any indecent conduct, intentionally done with or in the presence of a child, including via any communication technology, that amounts to a form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave the morals with respect to sexual relations.

Article 120b(h)(5)(D), UCMJ. Thus the operative language remains largely the same, with the exception that the "physical presence of a child" requirement has been replaced by the more expansive "with or in the presence of a child, including via any communication technology." I find this change does not undermine the applicability of *Burkhart*'s interpretation of the term "presence." If anything, it suggests that Congress's use of the term "presence" is not simply a matter of being "in proximity to the child." *Cabuhat*, unpub. op. at *13.

Accordingly, I find the military judge's colloquy with Appellant raised a substantial question regarding the providency of the guilty plea with respect to Specification 5 of Charge I, and the military judge abused his discretion by accepting it. *See United States v. Riley*, 72 M.J. 115, 119 (C.A.A.F. 2013)

(citations omitted). Therefore, I would set aside the finding of guilty as to Specification 5 of Charge I.[2,3]

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[2] The Government contends that if this court finds Appellant's guilty plea inquiry with respect to his actions in his daughter's bedroom, while he believed she was asleep, does not support his guilty plea to Specification 5 of Charge I, we may still affirm the finding of guilty based on his admissions to the military judge regarding his actions in the living room and his bedroom. However, I do not find the remainder of Appellant's guilty plea inquiry adequately supports his plea of guilty to Specification 5 of Charge I.

[3] Of course, the conclusion that *Burkhart* required the victim to be aware of Appellant's conduct to convict him of sexual abuse of a child in violation of Article 120b(c), UCMJ, does not mean an accused does not commit a different UCMJ offense in the absence of such awareness. *Cf. Burkhart*, 72 M.J. at 595–96 (finding the appellant guilty of the lesser included offense of indecent acts in violation Article 120(k), UCMJ; *Manual for Courts-Martial, United States* (2019 ed.), pt. IV, ¶ 104 (providing indecent conduct that is prejudicial to good order and discipline or of a nature to bring discredit on the armed forces is punishable by, *inter alia*, a dishonorable discharge and confinement for five years).